## SMITH ET ALS. V. ZANER ET ALS.

1. When legal testimony is united with, and offered together with illegal testimony, as a whole, although the Court may do so, it is not bound to separate the good from the bad—but may reject the whole.

2. An alien may take land by the act of the parties, as by purchase or devise, and hold until office found; but he cannot take by act of law, as by descent, as he has no inheritable blood. An alien cannot, at common law, be heir to any one ncr can he transmit inheritable blood to another.

ERROR to the Circuit Court of Tuscaloosa.

This was an action of trespass to try titles, brought in the Court below by the defendants against the plaintiffs. Under the charge of the Court the jury rendered a verdict in favor of the plaintiffs below, upon which judgment was rendered.

From a bill of exceptions taken pending the trial, it appears that the plaintiffs claimed to recover as the next of kin to Christopher Vanner, the person who died last seized, who were not aliens, being cousins of the full blood, that is children of the sister of the mother of Christopher Vanner.

After the plaintiffs had closed their testimony, the defendants proved that Christopher Vanner, the spring before he died, in the year ——, requested one Kurtz, who was about to go to Germany, to make inquiry after his next of kin there—that he told Kurtz that he had a sister in Germany, that he had not heard from her in a long time, and gave to him, Kurtz, as a clue, what purported to be an old parish certificate of good character given to his mother when she left Germany, which certificate is in the German language.

Kurtz deposed, that when he arrived in Germany he wrote to the parish and several other towns in Germany, but heard nothing of the kin of Vanner until at length he received letters from a Mr. Malempre, who claimed to be a son of the sister of Christopher Vanner, but that he had never seen Malempre in Germany, nor could he say whether the letters were genuine or not. The defendants also offered to introduce certain

papers, (the originals of which are sent up with the record and will be hereafter described,) and offered by the witness, Kurtz, to translate them.   And also proposed to prove by him, he professing to be acquainted with the subject, that by the laws of Germany no access was allowed to the original records, of which it was alledged these papers were transcripts, except by the keeper of such records, who has authority to make and certify extracts therefrom.   The witness also stated that he had applied for and received the papers from such keeper of records, and that they were in the same state as when he received them—that their authenticity was certified in the manner required by the laws of Germany, and had the signature of the keeper of such records and the seal of his office—but the witness said he was not a civilian, or German lawyer; to the introduction of these papers the plaintiffs' counsel objected, and the objection was sustained by the Court, to which the defendants excepted.

The defendants then introduced Malempre, who deposed that his mother was dead, and had left in Germany, besides himself, several children—that he had an aunt, the sister of his mother still living in Germany—that he was thirty-five years of age, that his mother died when he was five years old—that he had heard his mother speak of the emigration of Christian Werner and some other relations to America, at an early date, and that his mother and aunt claimed to be the sisters of Christian Werner—that witness had never seen Christopher Vanner, and could only speak according to his belief as to the fact whether the said Christopher Vanner was his uncle or not. Evidence was also offered conducing to show that *Christian Werner* in German, and Christopher Vanner in this country were the same.

The defendants' counsel then moved the Court to charge the jury, that if they believed from the evidence that Christopher Vanner had a sister, and the children of a sister in Germany, that although they were aliens, the plaintiffs could not recover; which charge the Court refused, and charged that though they believed from the evidence that Christopher Vanner had a sister, and the children of a sister in Germany, who were aliens, that, being aliens, they could not take by descent. To which charge the defendants excepted.

Smith et als. v. Zaner et als.

The documents referred to in the bill of exceptions are in the Latin and German languages, consisting of, first, an extract from the *parochial* record of Bishopsheim of the marriage of the father and mother of Christopher Vanner, with the births of their children; second, an extract from the register of marriages and christening, of Wurtzburg, of the marriage of Franz de Malempre with Margaret Werner, the sister of Christian Werner, and the births of their children. Third, a certificate purporting to be made by the "Council of the overseers of the poor of the Royal County of Bishopsheim in the Kingdom of Bavaria," setting forth the good character of Elizabeth Eva Werner, sister of C. Werner. These documents are all signed by the persons who appear to have had the custody of the records, to which is attached their official seal.

To the first of these is appended the certificate of the Minister for Foreign Affairs of the Kingdom of Bavaria, with his seal of office, and the attestation of the Consul of the United States at Munich that his signature is genuine, to which is attached the Consular seal.

Fourth, two letters written by F. de Malempre, one to the defendant, Smith, and the other to Kurtz, in answer to inquiries made by him concerning the relations of Vanner in Germany—appended to these letters are translations.

The assignments of error bring to view the correctness of the refusal of the Court to permit the documents described in the bill of exceptions to be given in evidence, and the refusal to give the charge moved for by the defendants.

PORTER, CRABB & COCHRAN, for the plaintiff in error, contended, that this was not the case of a contest between an alien and the State, or with a purchaser and the ancestor, but was a question between the next of kin and an intruder. That as between these the question of alienage did not apply; the title was good against every one but the State. [3 Stew. 60; P. & M. Dig. 136.]

Upon the construction of the statute of descents of this State, they referred to 4th Kent's Com. 402–3–7–8.

That the defendants in error must derive their title through the mother of Vanner, who was an alien, and therefore had no inheritable blood. [Wilson v. Bartlett & Waring, 9 Porter,

266.]   They maintained that the defendants in error took *per stirpes* and not *per capita*, [4th Kent's Com. 452,] and that the statute of this State had not changed the rule of the civil law.

They insisted that the law of Germany could be proved by parol, and not being objected to and shown to be in writing will be presumed not to be a written law.   [6 Cranch, 274; 15 S. & R. 84; 2 Mil. Lou. R. 153.]

That a knowledge of foreign law is proved as a fact. [Cow. 174; 1 Cranch 28; 2 ib. 187.]

That the records of a foreign country may be proved by a copy, certified by the officer authorized by law.   [2 Cranch, 187; 6 N. H. 567–70; 2 Caines, 155.)   But that an inferior mode of authentication receivable.   [2 Mun. 53; 3 Call. 446; 2 Wend. 411; 5 ib. 375, 387, 391; 7 Cow. 434; 8 Mass. 273.]

For the law in relation to proof of proceedings of Foreign courts, and by the certificate of a Bishop—as to questions of marriage and pedigree—and proof of the seal they referred to 2 Saun. on P. & E. 745; 1 Philips Ev. 239, 399; 3 East. 221: 1 Gilbert's Ev. 25; 2 Starkie's Ev. 703; N. Y. Dig. 886; L. 102, 104, 890; S. 167, 893; S. 185, 963; S. 977, 979, 965; S. 992, 966; S. 1005.

Upon the first point they also referred to 13 Wend. 546; 7 ib. 333, 367; P. & M. Dig. 65; 3 ib. 60; 7 John. 214.

PECK & CLARK, contra, maintained that when a person dies, leaving issue who are aliens, the latter are not deemed his heirs at law, but that the estate descends to the next of kin, who have inheritable blood, in the same manner as if no such alien issue were in existence.   [4 Wheaton, 460; 3 Dess. 105; 7 Johnson, 214.]   That whether the grandmother of the plaintiffs was an *alien* or not, was of no moment, as the record shows that they are the next of kin of the whole blood who are citizens.   But they also insisted that this question was not presented on the record.

They admitted that pedigree might be proved by *examined* copies of parish registers, but not by *certified copies*.   [4 Phil. Ev. C. & H. ed. 284.]

That when a foreign law is proved to be unwritten it may be proved by witnesses professionally conversant with it.   [1

Phil. Ev. 401 ; 2 Cranch 236–7–8 ; Story's Con. of L. 529.] That no such offer was made in this case, and therefore the evidence was properly rejected.

ORMOND, J.—Two questions are presented on the record: The propriety of the rejection by the court of the documentary evidence offered by the plaintiffs in error, and the refusal of the Court to charge on their motion.

The documentary evidence rejected by the Court consists, first, of transcripts from what appears to be registers of births and marriages in Germany—one setting forth the marriage of the father and mother of C. Werner, the person last seized of the land in controversy, and the births of their children, and another the marriage of a sister of C. Werner, with a Mr. Malempre, and the births of their children. These documents are in the Latin and German languages, are signed by the keeper of the records, with the seal of his office annexed, and certified to be true copies from the record. Appended to the first of these documents, is the certificate of the minister of Foreign Affairs of the Kingdom of Bavaria, with the seal of the State, and of the Consul of the United States at Munich, verifying the signature of the Minister of State, with the Consular seal attached thereto. And further offered to prove their contents by one Kurtz, who professed his ability to translate them— also, that he was acquainted with the subject, and that by the laws of Germany no access was allowed to the original records of which it was alledged these papers were transcripts, except by the keeper of such records, who has authority to make and certify extracts therefrom. Witness also stated that he had applied for and received the papers from the keeper of the records—that they were in the same state as when he received them, and that their authenticity was certified in the manner required by the laws of Germany, and had the signature of the keeper of such records and the seal of his office, but the witness admitted that he was not a civilian, or German lawyer.

Also, a certificate purporting to be made by the council of the overseers of the poor of the Royal county of Bishopsheim, in the Kingdom of Bavaria, setting forth the good character of Elizabeth Eva Werner, sister of C. Werner, with the seal of their office.

Lastly, two letters in the German language, to which are appended translations purporting to be written by Malempre, the brother-in-law of Vanner, the person last seized, (or Werner, as he is called in German, (one to the defendant Smith, relating to the claims of the heirs of Vanner in Germany to the land in dispute, setting forth the nature of that relationship and urging him to preserve the property for the heirs. The other written by the same person to the witness, Kurtz, who had been requested by Vanner to make inquiry in Germany about his (Vanner's) relations, and embracing the same topics as the letter to Smith.

In most, if not all, civilized countries, some mode is provided by law for perpetuating the evidence of marriages. Such appears to be the case in Germany. It is however objected that, conceding such to be the fact, the proof can only be made by showing that the evidence offered was an examined copy of the record. Such is doubtless the law in England, under the influence of the rule of evidence that the best evidence in the power of the party to obtain must be adduced.— Conceding the law of Germany to be as stated by the witness, we should hesitate long before we decided that the two first mentioned papers were not evidence. To require any thing further would be, in effect, to require an impossibility, and the necessity therefore exists of submitting to inferior proof of the fact, if; indeed, the proof offered can be considered as inferior to proof by an examined copy. In the case of Church v. Hubbert, [2 Cranch, 187,] C. J. Marshall says, " it is very truly stated that to require respecting laws or other transactions in foreign countries that species of testimony which their institutions and usages do not admit of, would be unjust and unreasonable. The Court will never require such testimony. In this, as in all other cases, no testimony is required which is unattainable."

The proposition to introduce this testimony is thus stated in the bill of exceptions : " The defendants then offered to introduce as evidence certain papers which are hereto attached and made part of this bill of exceptions, and identified by mark No. 2, thereon, and offered a witness to translate them," &c. The originals are now before us, united by being stitched together, with the mark designating them on the back.

We cannot understand from the terms in which this proposition is conceived, that each piece of testimony was offered separately. The plain and natural import of the terms, how strange soever it may seem, are that it was offered as a whole, and if the language admitted of doubt, it would be set at rest by the appearance of the papers now before us.

Considering therefore, as we must, that this mass of documents were offered collectively; and as a whole, if any portion of them was incompetent or irrelevant, the Court, though it might have done so, was not bound to separate the good from the bad, but could only be required to 'respond to the motion as made, and approve or reject it. [Moore v. Leftwick, 1 S. and P. 254 ; Elliott v. Pearsol, 1 Peters; 328.]

No proposition relating to the law of evidence can well be clearer than that the letters, and certificate of good character of Elizabeth Werner, were not competent testimony in this action for any purpose. They are the mere unauthorized declarations of third persons, not made under the sanction of an oath, and without any opportunity being afforded to the party to be affected by them to cross examine; in a word they are mere hearsay.

If therefore, it be conceded, as we incline to think it must be, without attaching any weight whatever to the certificate of the Minister for Foreign Affairs, or the Consul of the United States, that the two first described documents were legal testimony, yet being united with, and offered together with, illegal testimony, the decision of the Court rejecting the whole must be sustained.

The question arising under the charge of the Court involves the consideration of the question of the right of an alien to inherit lands in this State.

The only statement of the title of the plaintiffs below is, " that they claimed to recover as the nearest of kin to Christopher Vanner, the person who died last seized, who were not aliens, being cousins of the full blood—that is, children of the sister of the mother of Christopher Vanner."

The defence shown by the record was that the plaintiffs could not recover, because there was in existence a sister and the children of a sister of Vanner, in Germany, although they

·were aliens. And to this effect the Court was asked to charge the jury, and refused.

The statute of descents of this State, so far as it is necessary to the elucidation of this question is, " Where there shall be no children, or descendants of them or any of them, then to the father, if he is living, if not to the mother of the intestate ; and if there be no children of the intestate, or descendants of such children, and no brothers or sisters, or descendants of them, nor father or mother, then such estate shall descend in equal parts to the next of kin to the intestate, in equal degree, computing by the rules of the civil law, and there shall be no representation among collaterals, except with the descendants of the brothers and sisters of the intestate," &c. [Aik. Dig. 128.]

Waiving, for the present, the inquiry relating to the plaintiffs' title, what obstacle to their recovery was presented by showing that a sister and descendants of a sister of the person last seized existed in Germany, it being also shown that they were aliens?

An alien, it is true, may take lands by the act of the parties, as by devise or purchase, and may hold until the State thinks proper to interpose, and cause the lands to escheat by an *inquest of office;* but he cannot take by the act of the law, as by descent, as he has no inheritable blood. An alien, as it relates to land, cannot at common law be heir to any one, nor can he transmit inheritable blood to another. [1 Bac. Ab. Alien C. 130; 1 Thomas' Coke, 100 ; 2 B. Com. 249 ; 7th Wendell, 368 ; 4 Wheaton, 453.]

Such being the law, the fact that the deceased had relations living in Germany, who were nearer of kin to him than the plaintiffs below, and therefore preferred by the statute, but who were *aliens,* would oppose no obstacle to their recovery, because such aliens, though nearer in blood, are not heirs. In the language of Judge Story, in Orr v. Hodgson, [4 Wheaton, 461,] " Where a person dies, leaving issue who are aliens, the latter are not deemed his heirs in law, for they have no inheritable blood, and the estate descends to the next of kin who have an inheritable blood, in the same manner as if no such alien issue were in existence." The Court therefore did not err in refusing the charge asked for.

It was however strenuously argued by the counsel for the

plaintiffs in error, that the plaintiffs below have no inheritable blood, and therefore not entitled to recover in this action. The argument is, that the descent from the deceased to them is not immediate, as in the case of brothers and sisters, but must be derived from the common ancestors, the maternal grandfather and grandmother, both of the plaintiffs and the deceased, who it is insisted were aliens, and therefore incapable of transmitting inheritable blood, so as to enable the defendants in error to take by descent from the deceased, and such it is said is the effect of the decision of this Court in Bartlett and Waring v. Morris, [9 Porter, 266.]

The concession that the law is as stated will not avail the plaintiffs in error any thing.

It is certainly true that the plaintiffs must recover by the strength of their own title, and not on the weakness of that of their adversaries, but we do not learn from the record that this question was mooted in the Court below, nor is there any evidence to be found in the record, rejected or admitted, which shows that either the mother of the plaintiffs below, or her grand parents were aliens. We may indeed conjecture that as all the rest of the family appear to have been Germans they were also. All that we know with certainty on the subject is, that "they (the plaintiffs below,) claimed to be the nearest of kin to the person last seized who were not aliens." Whether this *claim* was well or ill founded, is not one of the questions reserved for our decision, and so far as we are instructed from the bill of exceptions, must have been either waived or admitted by the plaintiffs in error.

The charge the Court gave for some reason which does not appear, is not given in the bill of exceptions. The defendants then asked the Court further to charge, not that the plaintiffs had no inheritable blood, and therefore could not recover, but that because the deceased had a sister and the children of a sister in Germany, although they were aliens, the plaintiffs could not recover. In refusing this charge the Court did not err.

It is the precise and appropriate function of this Court, to determine the questions of law presented on the record, and no other; and as no error is shown to exist in the judgment of the Court below, it must be affirmed.