[Civil No. 3053. Filed September 17, 1931.]

[3 Pac. (2d) 273.]

L. L. LOGANBILL, Appellant, v. E. E. ZOOK, Appellee.

Messrs. Swenson & Swenson, Mr. Walter C. Smith, Mr. S. B. Rayburn and Mr. H. M. Van Denburgh, for Appellant.

Mr. A. Van Wagenen, Jr., and Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellee.

ROSS, J.—This action was brought by L. L. Loganbill against E. E. Zook to enforce the specific performance of a contract to sell real estate. The relief sought was denied, and plaintiff has appealed.

The contract, dated September 10, 1928, by its terms obligated the defendant to sell, and the plaintiff to buy, the E. ½ of section 17, township 8 south, range 8 east, Gila & Salt River Base and Meridian, located in Pinal county, for the sum of $16,000, payable as follows: $1,000 in cash; $5,000 on January 1, 1930; $5,000 on January 1, 1931; and $5,000 on January 1, 1932. The S. E. ¼ of said section was at the time, and had been for some time, patented land, the defendant being the patentee thereof. The N. E. ¼ was unpatented but had been filed upon by defendant as an additional or enlarged homestead under the laws of the United States. This status of the two quarter-sections, comprising the E. ½ of section 17, was recognized in the contract and provided for as follows: The defendant was to execute a deed of the patented land conveying same to plaintiff and deposit it with the contract in the Casa Grande Valley Bank, of Casa

Grande. This was done. Likewise, he agreed to make a like deed of the unpatented quarter as soon as it was patented and place it with the same escrow-keeper, with instructions to deliver the deeds when the plaintiff complied with the terms of the contract. In the contract was the following provision:

"It is further agreed that in case of failure on the part of the party of the first part to obtain and secure the Government Patent for and covering the N. E. ¼ of Sec. 17, T. 8 S. of Range 8 E., G. & S. R. B. & M., then the cash payment of $1,000.00 made herewith, shall be applied on the purchase price of the S. E. ¼ of Sec. 17, T. 8 S. of R. 8 E., G. & S. R. B. & M., and the deferred payment shall be in proportion reduced."

The contract provided that plaintiff have immediate possession of both the patented and unpatented land for the purpose of clearing, working, and putting the same in condition for farming, excepting therefrom only the defendant's "houses and buildings and lots around same," the possession of which was to be delivered plaintiff January 1, 1930. In accordance with the contract, the plaintiff took possession of the premises, both patented and unpatented, except the portion occupied by the defendant's houses; made arrangements for water to irrigate the land from a power plant and line located on the W. ½ of said section 17, belonging to plaintiff's uncle, W. H. Horchheimer. In 1929 and 1930 he cultivated something like 140 acres of the patented and some portions of the unpatented land.

On June 21, 1929, defendant notified plaintiff that he would not fulfill the contract and tendered plaintiff the $1,000 cash payment, with interest. In his letter rescinding the contract and making tender, defendant gave as a reason therefor that he had learned that a contract to convey a homestead entry after final proof, with possession given under such contract, would call for the cancellation of the entry

by the government. Plaintiff refused to accept the return of the cash payment, and on or about December 30, 1929, deposited with the escrow-keeper, Casa Grande Valley Bank, an additional $7,000, which, together with the $1,000 cash payment and accrued interest, amounted to $8,055.44, and demanded of defendant that he deliver, or authorize the escrow-keeper to deliver, to him the deed of patented land, dated September 10, 1928. This deed, in the ordinary form of warranty deeds, named as its consideration $8,000.

The theory of the plaintiff, as contained in his complaint and repeated many times in his brief, is that the contract and deed are parts of the same transaction and must be taken and construed as one instrument, and, when considered in that way, definitely and certainly fix the price to be paid for the patented land at $8,000, because that sum is mentioned in the deed as the consideration. He also, while admitting that the part of the contract undertaking to sell the unpatented land is illegal and unenforceable, insists that the part thereof agreeing to sell, or selling, the patented part is legal and enforceable, because it can be readily severed from the illegal portion. This is the law. 13 Corpus Juris, 563, § 528, and 512, § 470; Fry on Specific Performance, 6th ed., 384, § 825; 1 Elliott on Contracts, § 249. In fact, it is said, and truly, that the parties themselves by their language intended that the sale of the patented land should be consummated, even though that of the unpatented could not be by reason of a failure to obtain a government patent thereto. This is evident from the provision in the contract diverting the $1,000 cash payment made on the purchase price of the E. ½ of section 17 to a payment on the purchase price of the S. E. ¼ thereof, with the further provision that "the deferred payment shall be in proportion reduced." Whatever else may be said of this lan-

guage, it is clear the parties expected at all events the sale of the patented land to be carried out, but upon what terms they are not agreed.

Defendant denies that $8,000 was ever agreed upon as the price to be paid for the patented land, and in that connection alleged in his answer, and proved by evidence, that the patented land was worth approximately $12,000, whereas the unpatented land was worth approximately $4,000. W. H. Horchheimer, who owned the W. ½ of section 17, and who procured from defendant the contract and advanced all payments thereon for plaintiff, testifying, said that the patented quarter-section was worth $8,000 and the unpatented worth one-half thereof, or $4,000. This witness is an uncle of the plaintiff. This defense, however, plaintiff claims violates the parol evidence rule. We do not think so.

"It is a well established rule that the true consideration of a deed of conveyance may always be inquired into, and shown by parol evidence, for the obvious reason that a change in or contradiction of the expressed consideration does not affect in any manner the covenants of the grantor or grantee, and neither enlarges nor limits the grant. But this rule cannot be extended so as to let in proof overturning the operative words of the grant in a deed free from ambiguity, or contradicting the deed itself or the descriptions therein." 22 C. J. 1161, § 1557.

In *Jost* v. *Wolf,* 130 Wis. 37, 110 N. W. 232, the court, in discussing the effect of recitals in deeds as evidence, said:

"The inconclusiveness of a mere deed of conveyance to exclude other evidence of the various terms of the contract in part execution of which it is made has been declared by this court so often as to hardly warrant further statement. Such deed, on its face, shows that it is not an attempt to reduce to writing the agreement between the parties, but merely to execute some part of a broader agreement. A simple

conveyance is unilateral, while a contract is, in its nature, at least bilateral. *Perkins* v. *McAuliffe,* 105 Wis. 582, 81 N. W. 645; *Brader* v. *Brader,* 110 Wis. 423, 85 N. W. 681. Of course deeds vary in form, and some contain more or less expression of the contractual undertakings of one or both parties. As to such subjects the written expression, like any other, is exclusive of oral proof. *Powers* v. *Spaulding* [96 Wis. 487, 71 N. W. 891], *supra; Desmond* v. *McNamara* [107 Wis. 126, 82 N. W. 701], *supra;* 2 Page, Cont. § 1025; 4 Wigmore, Ev. § 2433. In antithesis to such expressions of that which either party promises are those mere declarations, recitals, or acknowledgments of existing facts, not contractual at all. These, while perhaps *prima facie* evidence of such facts, are not conclusive, nor exclusive. . . . To that end, however, the correctness of the recital was and is wholly immaterial, and the authorities, practically without exception, recognize that it binds no one as to its correctness, but may be proved, *aliunde,* to have been greater or less or different in character, as property or services instead of money, and the like, so long as it is not inconsistent with the existence of some consideration to support the conveyance. [Citing cases.]"

See, also, *Roberts* v. *Stiltner,* 101 Wash. 397, 172 Pac. 738; *Wiltrout* v. *Showers,* 82 Neb. 777, 118 N. W. 1080; *Erickson* v. *Wiper,* 33 N. D. 193, 157 N. W. 592; *Laclede Laundry Co.* v. *Freudenstein,* 179 Mo. App. 175, 161 S. W. 593.

Defendant also alleged in his answer that the clause in the contract to the effect that if no government patent to the N. E. ¼ of said section was issued the cash payment of $1,000 should "be applied on the purchase price of the S. E. ¼ . . . and the deferred payment shall be in proportion reduced," was agreed at the time of signing the contract to mean "a reduction proportionate to the value of the two tracts of land, and that said reduction should be determined by appraisers." The court permitted the introduction of evidence in support of this averment, upon the theory

that the clause was ambiguous; that it was not clear from the language whether the reduction as claimed by plaintiff was upon an acreage basis, or upon a valuation basis as claimed by the defendant. Upon that issue the court submitted to a jury three interrogatories, in substance: Did the parties at the time of signing the contract agree upon an interpretation of the clause "and the deferred payment shall be in proportion reduced"? Was the reduction to be upon the valuation? And was such reduction to be ascertained by appraisers? The jury answered all these questions in the affirmative and the answers were adopted by the court. Whether that clause of the contract is ambiguous or not depends. If the recital in the deed of an $8,000 consideration is not to be taken as the true consideration, and as we have seen it is not, it cannot be determined from this isolated clause of the contract whether the reduction was to be upon the basis of valuation or acreage.

We conclude that the contract was indefinite and uncertain as to the price defendant was to be paid for the patented land, in case no sale of the unpatented land was consummated, and that it was not error to admit parol evidence of the agreement that the consideration for the patented quarter was to be based on a valuation to be determined by appraisers.

It is a familiar rule that parol evidence is admissible to explain ambiguities in contracts. 22 Corpus Juris, 1173, § 1570.

Although we have not taken up the assignments serially, we think we have covered them all in this opinion.

Plaintiff has not offered to comply with the contract as construed, and is not entitled to a specific performance thereof.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.