EDWARD R. DAVENPORT *vs.* CLAYTON A. HASKELL.

Worcester. January 9, 1936. — February 24, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Evidence,* Of value; Opinion: expert.

The owner of timber might testify as to his opinion of its value.

An expert lumberman familiar with a tract of woodland might give an opinion as to the amount of timber cut from the entire tract, based upon his measurement of the stumpage of representative cross sections.

An expert lumberman might base his opinion of the value of timber upon market reports and his knowledge of local appraisals.

TORT. Writ dated April 26, 1932.

The action was tried in the Superior Court before *Collins,* J. Upon the answers to special questions to the jury, the judge ordered a verdict for the plaintiff in the sum of $6,534.77. The defendant alleged exceptions.

*C. Fairhurst,* for the defendant.

*O. A. Hoban,* for the plaintiff.

CROSBY, J. This is an action of tort to recover damages for cutting and carrying away wood and timber from the plaintiff's land.

The plaintiff's declaration is in two counts. The first in substance alleges that on or about June 1, 1928, the defendant entered upon the plaintiff's land, and cut down and carried away the plaintiff's trees and converted them to his own use. The second count alleges that the defendant with force and arms entered the plaintiff's close, described in the first count, and wilfully and without license cut down, damaged and destroyed the plaintiff's trees and underwood, and carried the same away, and the plaintiff says that he is entitled to recover three times the

amount of the damages in accordance with the provisions of G. L. (Ter. Ed.) c. 242, § 7.

The evidence showed that in 1928 the defendant purchased approximately one hundred sixty acres situated in the towns of Athol and Petersham in this Commonwealth. The land described in the plaintiff's declaration consisted of approximately sixteen acres, and was included in the defendant's deeds. When the defendant was negotiating for the purchase of this one hundred sixty acres "the plaintiff standing on his own land pointed out what he claimed was his line, and warned the defendant that if he cut the timber on it he would do so at his peril and protested to the defendant the inclusion of the disputed sixteen-acre piece. Lula D. Pratt claiming ownership of such tract included it, however, in a warranty deed to the defendant" and thereafter he cut and removed the timber standing thereon. Later the plaintiff, by contested proceedings in the Land Court, obtained a decree of registration of the sixteen-acre tract in his name and thereupon this action was instituted. It was admitted by the defendant at the trial "that the plaintiff was the owner of the land described in the declaration; that the defendant entered upon it, cut and removed the timber standing thereon and that the plaintiff was entitled to recover damages in this action." The trial then proceeded on the issue of damages. Special questions were submitted to the jury who found that there was a wilful cutting within the meaning of the treble damage statute, that the defendant did not have good reason to believe that the land on which the trespass was committed was his own, and assessed single damages at $2,090 with interest from the date of the writ at $264.77, and, the damages being trebled under G. L. (Ter. Ed.) c. 242, § 7, returned a verdict for the plaintiff in the sum of $6,534.77.

The plaintiff offered the testimony of two witnesses, who were experienced lumber dealers and estimators of timber, who qualified as experts on the stumpage value of the various kinds of timber which were cut and removed by the defendant from the plaintiff's land during the sum-

mer of 1928. Their testimony was admitted without objection. The plaintiff testified that he lived in Petersham and had lived there practically all the time since 1909; that he owned a farm there which had been in the Davenport family since 1801; that the sixteen-acre tract had been a part of the farm since 1882; that he was familiar with it; that he was not an expert timber man; that before any timber had been cut the lot was worth $2,500; that after the timber had been cut off the land was worth $5 an acre. There was no objection to the admission of this testimony of the plaintiff when it was offered, but at the close of the entire testimony the defendant moved that it be struck out so far as it related to the value of the lot and the timber on it. This motion was denied subject to the defendant's exception. The plaintiff, as the owner of the land and timber on it, was entitled to testify as to such values. *Wooley* v. *Fall River*, 220 Mass. 584. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 504. The motion was rightly denied.

Neal W. Hosley, called by the plaintiff, testified that he lives in Petersham and is connected with the Harvard University Forestry Department as an instructor; that "they have two thousand acres practically all timber land"; that he was educated at Syracuse University and took postgraduate work at Harvard, specializing at Syracuse in forest management which includes measurement of "forest areas, and growing of forest crops, and measurements of forests, meaning measurements of both standing and down timber"; that he had experience at Syracuse and Harvard and on Harvard land in Petersham in measuring and estimating both standing and down timber, and was familiar with the processes for the proper estimates of stumpage on a lot that has been cut; that "there is a definite procedure in making that sort of estimate, recognized in the profession"; that he was furnished with a plan of the sixteen-acre tract, and was on the lot when the cutting had just started in 1928; that his impression was that the hemlock was better than the average. He was asked by counsel for the plaintiff the following: "Tak-

ing them up in order, in your opinion how many board feet of hemlock were cut from that lot?" This question was objected to by counsel for the defendant who stated that he objected "because it is not a method that is accurate or even probable that in a case of this sort there cannot be any reconstruction any more than there could be reconstruction in the event of an automobile; . . . it seems to me it is all guesswork." The evidence was admitted subject to the defendant's exception. The witness then testified as to his estimate of the number of board feet of the various kinds of lumber cut on the lot and the stumpage value of these different kinds of lumber in June, July and August, 1928. He testified that the total value was $2,464.91. This testimony was admitted subject to the defendant's exception. Thereafter the witness testified at length in response to questions put by counsel for both parties. On recross-examination he testified as follows: "there was a certain part of this sixteen acres that he did not actually measure the stumps, that is, the stumps were measured on approximately four acres, but on the balance of the lot they were not measured; I got a figure of practically three and two tenths and used that figure for some other purpose but there are lots of stumps on that lot that I never counted and never measured." On redirect examination he testified "that the cross sections were representative of the portions of the lot that he did not cross section."

The defendant testified as to his estimate of the quantity of timber on the lot, and its value. He stated that the amount of hemlock which was actually cut from the lot and sold in the market was forty-four thousand eight hundred ninety-eight feet. He further testified as to the operating expenses and stumpage values; and that the various kinds of timber on the lot had a total value of approximately $500. Francis Sweeney, who conducted the logging operations on the lot, testified as to his estimate of the number of feet of lumber of the various kinds on the lot. One Fay, the representative of Lula D. Pratt who sold the timber to the defendant, testified that there was approximately one hundred thousand feet of all kinds of

timber on the lot, three quarters of which was hemlock. The defendant's wife, who kept his books, testified that according to the books the total amount of timber cut on the whole one hundred sixty acres was one million one hundred ninety-six thousand one hundred sixty-one feet; she also testified as to the prices and persons to whom it was sold. The defendant introduced the testimony of one Fairbanks, a timber man of many years experience, as to the market value of the timber cut on the plaintiff's lot, to the effect that the stumpage value of the hemlock cut was between $4 and $5 per thousand. The defendant also moved to strike out the testimony of the witness Hosley as to the stumpage values of the various kinds of timber that were cut from the lot. The motion was denied and the defendant excepted.

No question is raised by the defendant as to the qualifications of the witness Hosley to testify as an expert as to the quantity of timber that had been cut, and its value. The defendant objected to the method adopted by this witness in estimating the amount of timber on the lot that had been cut by the defendant. It could not properly have been ruled that the methods so employed by this witness were unreliable and should have been excluded. The issue as to how much timber had been cut from the lot was not a matter of common knowledge where nothing had been left on the lot except the stumps and limbs of the trees after the trees had been cut down and removed. This witness was called by the plaintiff and testified as an expert. He testified as to his qualifications on his direct examination. He also stated that he had been upon the lot and he estimated the number of board feet of various kinds of lumber that were cut there. The trial judge ruled that the evidence was admissible, its weight being for the jury. We are of opinion that the ruling was correct and that the defendant's exception thereto must be overruled. *New England Glass Co.* v. *Lovell,* 7 Cush. 319, 321. *Commonwealth* v. *Spiropoulos,* 208 Mass. 71, 72, and cases cited. *Miller* v. *Smith,* 112 Mass. 470. *Ross* v. *Schrieves,* 199 Mass. 401. *Shaw* v. *Keown & McEvoy, Inc.* 243 Mass. 221. The wit-

ness Hosley testified that he obtained information of sales of hemlock in that vicinity from the reports of the Society of American Foresters Market Report and from appraisals for sales in that immediate vicinity as a basis of his opinion as to values.  His use of such information was not erroneous, especially when it was checked by sales in the vicinity and adopted as the basis of an opinion with the sanction of his experience.  *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261.  *Shaw* v. *Keown & McEvoy, Inc.* 243 Mass. 221.  Besides the testimony of the witness Hosley as to the amount of timber cut and removed from the lot and its value, the witnesses White and Whitney, both experienced lumber dealers, testified as experts on the various kinds of timber cut on the plaintiff's lot by the defendant, and the stumpage value.  The values to which Hosley testified were substantially the same as those testified to by the plaintiff.

The case was submitted to the jury upon instructions to which no objection was made.

As no error of law appears in the conduct of the trial, the entry will be

*Exceptions overruled.*