420 P.2d 992

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellant,**

v.

**Jack A. WILSON and Violet R. Wilson, his wife, Appellees and Cross Appellants.**

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellant,**

v.

**James L. FINLEY and Margaret I. Finley, Appellees.**

**No. 2 CA–CIV 126.**

Court of Appeals of Arizona.

Dec. 6, 1966.

Opinion Supplemented and Rehearing Denied Jan. 19, 1967.

See 4 Ariz.App. 577, 422 P.2d 408.

Darrell F. Smith, Atty. Gen., William E. Kimble, Sp. Asst. Atty. Gen., Tucson, for appellant.

Dunseath, Stubbs & Burch, by Robert C. Stubbs, Tucson, for appellees and cross appellants.

MOLLOY, Judge.

This is an appeal from judgments rendered in two condemnation actions which were consolidated for trial purposes. The actions involved the conversion of State Highway 86, running between Benson and Willcox, Arizona, into U. S. Interstate 10. The two properties concerned lie in Texas Canyon near the intersection of this interstate highway with Dragoon Road, a county road which runs into the interstate highway from the south. The land taken from both property owners was to be used to construct a traffic interchange at this road junction.

As the result of these condemnation actions, both properties would be deprived of all direct access to the interstate highway. In the "before" situation, both properties had substantial frontages on a highway consisting of two strips of pavement conducting, respectively, east and west traffic. In the vicinity of the two subject properties, there were three crossovers so that westbound traffic could turn into the respective properties. The two strips of pavement in the "after" situation remained in place, but the crossovers were eliminated and the only access to the properties in question in the future was to be by means of the Dragoon Road interchange, which was designed for low speed, low density traffic.

A jury trial lasted for fifteen full trial days and resulted in jury verdicts (1) allowing the Finleys $17,220 for the property taken and $10,530 for severance damages, and (2) allowing the Wilsons $65 for the property taken and $20,763 severance damages. The state has appealed from both judgments and the defendants Wilson have cross-appealed from the judgment in their favor, contending that the damages allowed were inadequate insofar as severance damages are concerned.

The appeal taken by the state is presented in thirteen questions for review. The first seven all question the trial court's rulings upon the nature and extent of an abutting property owner's access rights in a public highway, and the extent to which the damages to access rights sustained in this action were noncompensable because caused by an exercise of the police power of the state. Generally, the state contends that a property owner's right of access in an abutting public highway is a private easement which does not extend to patrons, clients and customers, nor to the traveling public upon the through highway, and that any damage caused to the property owner by interference with access pertaining to such persons is damnum absque injuria because resulting from an exercise of police power.

 It is, of course, well-established law that damages resulting from an exercise of the police power of the state are noncompensable. 1 Nichols on Eminent Domain, § 1.42, p. 87 (3d ed. 1964). We believe it also to be the law that a condemnation action may present items of damage which are both compensable and noncompensable, and that if proper objections and requests for jury instructions are made, the trial court has the duty to segregate the compensable from the noncompensable. The following language in Rose v. State, 19 Cal.2d 713, 123 P.2d 505 (1942), is deemed pertinent:

"Whenever it becomes necessary to estimate the amount of damage inflicted upon private property for the benefit of the public, whether or not there is a taking of property in conjunction with the damage, there is a danger that the decline in market value may be attributable to causes other than those for which the landowner is entitled to recover." 123 P. 2d at 519

\* \* \* \* \* \*

"Damages resulting from an interference with private rights of property must be estimated with reference to the diminution in value caused by that legal injury. The presence of a single compensable injury, such as the impairment of an easement, should not be made the basis for a recovery of the total depreciation in value of a landowner's property where it appears that much of the depreciation is attributable to legally noncompensable factors." 123 P.2d at 521–522

The foregoing is well-established law in the State of California. People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799 (1943), the landmark decision dealing with loss of access rights, is in accord:

"Not every depreciation in the value of the property not taken can be made the basis of an award of damages." 144 P.2d at 802

Other leading California cases to the same effect are: Sacramento and San Joaquin Drainage District etc. v. Reed, 215 Cal. App.2d 60, 29 Cal.Rptr. 847 (1963); People ex rel. Dept. of Public Works v. Ayon, 54 Cal.2d 217, 5 Cal.Rptr. 151, 352 P.2d 519 (1960); Blumenstein v. City of Long Beach, 143 Cal.App.2d 264, 299 P.2d 347 (1956).

The following are supportive and illustrative of this view: Campbell, The Limited Access Highway—Some Aspects of Compensation, 8 Utah L.Rev. 12, 18–19 (1962–1964); 5 Nichols on Eminent Domain § 18.-42(1), pp. 240, 249 (3d ed. 1962); State v. Ensley, 240 Ind. 472, 164 N.E.2d 342 (1960); State v. Fox, 53 Wash.2d 216, 332 P.2d 943 (1958); 26 Am.Jur.2d Eminent Domain § 160, pp. 829–31.

■ We believe it also to be well-established law that the property owner has no property right in the traffic flowing by his property, as such, and that a diversion of such traffic by the state authorities is noncompensable. Rayburn v. State, 93 Ariz. 54, 58, 378 P.2d 496 (1963); Mabe v. State, 86 Idaho 254, 385 P.2d 401 (1963); People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799, 804 (1943).

■ While the difference between the "before" and the "after" value of real estate has been suggested by our Supreme Court as being a measure of severance damages in condemnation actions, State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 325, 350 P.2d 988 (1960), we do not believe that our Supreme Court has intended the "before" versus "after" test to be used in such manner as to include noncompensable damage within the award to property owners in condemnation actions. Accordingly, we approach the problems presented to us on this appeal accepting these basic contentions of the state.

However, in attempting to apply this well-established law to this case, we believe that the state fundamentally misconceives the nature of an abutting property owner's rights of access as established by prior Supreme Court decisions in our state and that much of its argument pertaining to the police power therefore misses the mark.

■■ In State ex rel. Morrison v. Thelberg, supra, the Supreme Court stated:

"* * * an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right." 87 Ariz. at 324, 350 P.2d at 991.

Also:

"When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor." 87 Ariz. at 325, 350 P.2d at 992.

Limiting the nature of this property right is the following in *Thelberg*:

"It seems to be the law, however, that where land is condemned or purchased for the construction of a controlled-access highway upon a new right of way alongside the old road that an abutting owner of land on the old highway, which is retained as a service road, cannot recover damages for destruction or impairment or loss of access for the reason that his access to the old highway has not been disturbed in the slightest degree. State v. Peterson, 134 Mont. 52, 328 P.2d 617–628." 87 Ariz. at 324–325, 350 P.2d at 992.

In *Thelberg*, damages were allowed on the basis that by placing the Thelberg property upon a new frontage road and depriving it of its access to the old roadway, the highest and best use of the remaining portion had been changed from that of commercial to residential. (87 Ariz. at 326, 350 P.2d 988.) It is most apparent in *Thelberg* that damages were being allowed for the deprivation of access to the through traffic. The result reached is completely inconsistent with appellant's thesis here that the abutting owner's access rights do not include prospective customers who may be a portion of this through traffic. The *Thelberg* result is also reached in a somewhat different factual situation in State ex rel. Morrison v. Jay Six Cattle Company, 88 Ariz. 97, 353 P.2d 185 (1960).

The same court deciding these cases, however, has held:

" 'The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities.' " Rayburn v. State, 93 Ariz. 54, 58, 378 P.2d 496, 499 (1963), quoting from State v. Peterson, 134 Mont. 52, 328 P.2d 617 (1958)

■ The rationale of these decisions must lie in the essence of the right of access, as recognized by our Supreme Court.

The decisions are only reconcilable if the right of access in question is regarded as an easement appurtenant to the abutting, privately owned land attaching to the specific land occupied by the abutting highway as the servient estate. That this is the basic nature of the right in question is indicated by: 26 Am.Jur.2d Eminent Domain § 199, pp. 880–882; 25 Am.Jur. Highways § 154, pp. 448–451; 29A C.J.S. Eminent Domain § 105(1), pp. 424–429; 39 C.J.S. Highways § 141, pp. 1079–1083; Clarke, The Limited Access Highway, 27 Wash.L.Rev. 111, 115.

■ Most publicists speculating upon the origin of the easement in question suggest that it harks back to the time when roads were established by property owners through their lands, without compensation from the public, for the mutual convenience of themselves and the public. Hendrickson v. State, 267 Minn. 436, 127 N.W. 2d 165, 171 (1964); Campbell, The Limited-Access Highway—Some Aspects of Compensation, 8 Utah L.Rev. 12, 14 (1962–1964); Covey, Frontage Roads: To Compensate or Not to Compensate, 56 N.W. U.L.Rev. 587, 596–97 (1961); 1959 Wash. U.L.Quarterly 310, Note: Limited-Access Highways: Public Interest v. Access Rights of Abutting Owners; Cunningham, The Limited-Access Highway From a Lawyer's Viewpoint, 13 Mo.L.Rev. 19, 31 (1948). Even in this day, it is well known that many property owners dedicate roads to the public, free of charge, for the mutual benefit of the public and the landowner so dedicating. It is also part of our statutory law that abutting property owners are often charged the cost of improving and widening the public streets in front of their properties. See Weitz v. Davis, 4 Ariz. App. 209, 419 P.2d 113 (1966).

■ The equities inherent in the origins of this right of access urge that it be dignified as a right-in-land and our court has so considered it. When this right is considered as a real property right, it no longer appears "absurd" [1] that there are remarkable differences in the value of rights of access depending upon the particular location of the interstate non-access highway. All real estate has relative value by reason of its location. This is an economic axiom affecting the value of access rights as well as all other real property. When public authority through its power of eminent domain severs from the dominant tenement of the landowner the appurtenant easement over the servient real estate (in this case, the highway),[2] and if the servient estate by reason of its particular location is used and is going to be used in the foreseeable future as an interstate highway, it seems clear that the property owner has been damaged by such extinguishment substantially more than if the servient estate was an untraveled dirt road. The additional damage caused by reason of the fact that the servient estate is a well-traveled highway cannot be relegated to the classification of damnum absque injuria merely because such traffic is subject to being diverted to another location at some speculative future time. The important thing in cases such as this is that the traffic has *not* been diverted; rather the land over which the abutting property owner has an easement carries heavy traffic and will continue to do so into the foreseeable future.

1. In commenting upon the difference in access rights between the situation where the new non-access highway is to be located in the same location as the old highway (as in *Thelberg*), as opposed to where the non-access highway will be located in an adjoining area with the old highway retained as an access road (as in State v. Peterson, 134 Mont. 52, 328 P.2d 617), our Supreme Court commented: "This appears *absurd* at first glance but it is based upon sound reasoning as will appear from cases hereinafter cited." (Emphasis added) (State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 325, 350 P.2d 988, 992)

2. See Restatement of the Law of Property, Division V, Servitudes, §§ 450, 453 and 507 for pertinent general law on easements appurtenant and the condemnation thereof by public authority.

With this basic understanding as to the nature of an abutting property owner's right of access, we consider the first question presented by the state for review, which relates to whether the court erred in permitting the jury to consider loss of business to the Wilson guest ranch as an item of damage. In the state's brief it is pointed out that Mrs. Wilson, one of the property owners, was permitted to testify, over objection, that the gross volume of the guest ranch business conducted on their property had dropped one-third after the access rights were taken. In overruling an objection to such testimony the court stated that such evidence " * * * cannot be used for the purpose of showing the non-compensable injury of loss of profits. It will be admitted by the court for the purpose of showing or running to the establishment of the value before and after of this property."

Further, in instructing the jury, the court stated:

"You are instructed that you are not to consider any claimed loss or impairment of business of the defendants in assessing damages to the remainder of the property, inasmuch as the law permits damages to be awarded for injury to property but not injury to business conducted thereon."

It seems to be the general law that in a condemnation action evidence of profits derived from a business conducted on the property is too speculative or uncertain to be considered as a basis for computing or ascertaining market value of property. For general statements of this law, see Orgel, Valuation Under Eminent Domain, Vol. 1 (2d ed. 1953) § 162, pp. 655–62; Jahr, Law of Eminent Domain, § 147, p. 226 (1953); annotations 7 A.L.R. 164, 65 A.L.R. 455, 134 A.L.R. 1125, 16 A.L.R.2d 113, and 27 Am.Jur.2d § 286, p. 87. However, the courts have consistently distinguished between profits from a business and income from the real property itself, which is considered to have relevancy as to the market value of the land. See treatises and annotations cited above. Though this distinction has almost universal acceptance, the courts have had difficulty in determining when income arises from a "business" as opposed to that derived from the intrinsic nature of the property itself.

In drawing a dividing line between the two types of income involved, we believe that considerable room for the discretion of the trial court must be allowed. We see sufficient relationship between the income from a guest ranch and the value of the real property used as that guest ranch so that we do not consider the admission of the evidence in question to be an abuse of discretion. Neither do we feel that the jury was permitted by the court to consider this evidence of loss of profits for an improper purpose, in view of the limiting instructions quoted above.

The next question for review is whether the trial court erred in permitting the jury to consider loss of traffic as an item of damage. During the trial traffic counts conducted by the State Highway Department of the interstate highway in question were admitted in evidence without objection on the part of the state. At the time the jury instructions were settled, the state requested an instruction telling the jury to completely disregard whether motor traffic, other than that of the owners of the properties themselves, would be less likely to see or stop at the properties remaining. This instruction further informed the jury that the right of access in question was a " * * * purely personal right in the owners themselves" and the fact that the state in making the highway changes had removed the general flow of traffic from a point immediately in front of, and accessible to, the properties in question should not to any extent whatever be considered in determining severance damages. This instruction runs counter to the case law of this state discussed above, and we hold the instruction was properly refused. Contrariwise, the trial court gave, over objection, an instruction that the jury might consider evidence concerning the amount of

traffic which passed along the highway in the vicinity of the defendants' property. There was no objection to this instruction on the basis of its singling out evidence for comment, State v. Eisenstein, 72 Ariz. 320, 331, 235 P.2d 1011 (1951), the objection presented to the trial court being a reiteration of the state's concept of the limited nature of the access rights of an abutting property owner, a concept we have rejected in this opinion. Accordingly, we see no error in the giving of this instruction. Rule 51(a), Rules of Civil Procedure, 16 A.R.S.

The third question presented is whether the court permitted the jury to consider inconvenience by virtue of circuity of travel as an item of damage. The state had requested an instruction that the jury was not to consider any impairment of access in determining damages to be awarded unless the jury found that the owners' access had been impaired to a degree which decreased the fair market value of the property. Though this instruction was refused by the court, the manner of presenting this case to the jury made it crystal-clear that inconvenience alone would not affect the verdict unless it affected property values.

■ The verdicts submitted to the jury were in such form that the jury found the "before" value of the land, the "after" value, the value of the land taken, and the value of the severance damages. In each case, the total of the severance damages as found by the jury, plus the value of the land taken, equalled the difference between the "before" and the "after" value of the land. There was no objection taken by the state to the form of these verdicts. The entire tone of the case as revealed by the transcript indicates that the trial was an inquiry into the amount that real property values were affected by the construction of the improvements in question. Insofar as this instruction pertained to convenience of access, we see no harm in the instruction, but, contrariwise, we see no reversible error in the failure to so instruct under

these circumstances. We do not pass on the instruction in other regards.

The state complains that the jury was instructed that " * * * it could consider any matters a *knowledgeable* purchaser would consider in arriving at its opinion as to value." (Emphasis added.) The actual instruction given informed the jury:

"Matters that anyone contemplating the purchase of land might take into consideration, in determining its value, are to be considered by you in determining the value of land sought to be condemned."

The only objection made to this instruction at the time of trial was:

"This is not a correct statement of the law inasmuch as the test that is applied involves that of a *knowledgeable* purchaser purchasing with full knowledge of all circumstances affecting the value of the property." (Emphasis added.)

■ On appeal the appellant has reversed its field. There is no argument made pertaining to the subject instruction that has any pertinency to the objection made in the trial court. Accordingly, we do not consider arguments in the appellant's brief which revolve around the question of whether, under this instruction, the jury was permitted to consider noncompensable items of damage caused by an exercise of the police power. Rule 51(a), Rules of Civil Procedure, 16 A.R.S.

The state presents the following question for review:

"Did the Court err in admitting and then failing to strike testimony of value based on noncompensable items of damage?"

At the conclusion of the property owners' opening case the state made the following motion:

"MR. KIMBLE: All right. It seems appropriate at this time for me to move the Court to strike the testimony of Mrs. Wilson and Mr. Finley and Mrs. Oaks and Mr. Mattingly insofar as it pertains to their opinion as to the value of this

property, either in the before or after condition, because their testimony has shown that they have based their testimony as to damages on legally non-compensable factors."

The "non-compensable factors" argued to the trial court, for the most part, pertained to the theory that the right of access involved was personal to the property owner and that any consideration of loss of access to the traveling public was non-compensable, a theory we have rejected here. However, the state also argued below that the loss of the crossovers was non-compensable and that this loss was considered by the value witnesses of the defendant.

It seems to be established law that the converting of a two-way street into a one-way street and the construction of dividers in the center of the street to prevent crossovers by vehicular traffic is so closely related to promoting safety on the highways that any resulting loss in value to abutting property owners is damnum absque injuria, because resulting from an exercise of the police power. Rayburn v. State, 93 Ariz. 54, 378 P.2d 496 (1963); Goycoolea v. City of Los Angeles, 207 Cal.App.2d 729, 24 Cal.Rptr. 719 (1962); People ex rel. Dept. of Public Works v. Ayon, 54 Cal.2d 217, 5 Cal.Rptr. 151, 352 P.2d 519 (1960); annotation 73 A.L.R.2d 694. We believe that the elimination of the three crossovers in question falls within this category and that any damage thus resulting is noncompensable.

If an appropriate instruction had been presented to the trial court instructing the jury that any such loss in value should be eliminated from computations of "before" value, or from damages awarded, we believe it would have been error to refuse such an instruction. However, no such instruction was requested. We are concerned only with whether it was error to fail to strike the testimony of value given by the owners of the property and their two professional real estate appraisers.

We believe the following to be a proper statement of law in the area under discussion:

"Where cross-examination reveals that loss-of-value testimony was based on noncompensable items, the testimony will be stricken in response to a proper motion." Sacramento and San Joaquin Drainage District v. Reed, 215 Cal.App. 2d 60, 29 Cal.Rptr. 847, 850 (1963).

However, the granting of a motion to strike testimony after the same has been given without objection is the exception rather than the rule. 88 C.J.S. Trial § 136, p. 279; 53 Am.Jur. Trial § 152, p. 137. A motion to strike inadmissible evidence is properly denied when it embraces evidence which is admissible as well as that which is inadmissible. 5 Nichols, Eminent Domain § 18.42(1) (3d ed. 1962), p. 250; Rose v. State of California, 19 Cal. 2d 713, 742, 123 P.2d 505, 522 (1942); 88 C.J.S. Trial § 140, p. 285; 53 Am.Jur. Trial § 151, p. 137.

As to the testimony given by the real estate appraisers, we see no possible error because both real estate appraisers testified that the elimination of the crossovers had no effect upon the values of the properties in question. Their credibility in this regard was considerably shaken on cross-examination, but neither of these professional appraisers directly repudiated sworn testimony in this regard.

The situation is different as to the value testimony of the property owners, Mrs. Wilson and Mr. Finley. Both testified, without objection, as to their opinions of the respective properties in the "before" situation as did Mrs. Wilson to her value in the "after" situation. Objection was overruled as to Mr. Finley testifying to an "after" value. On cross-examination, Mrs. Wilson admitted that it was "important" that there was a crossover in front of her property. Mr. Finley, on cross-examination, stated that one of his reasons for believing that his property had commercial value was because of the crossover permitting westbound traffic to patronize any

business located thereon. We hold that the degree to which the value testimony of these owners was contaminated by the influence of the crossovers does not support the motion to strike.

█ In giving opinion as to values, it is most natural for the witness to give an opinion as to property as it actually exists. This is the normal manner in which property is evaluated on the open market. Buyers do not stop to consider whether certain benefits enjoyed by property may be eliminated by some future exercise of the police power. It is difficult for this court to accept as an absolute requirement that all opinion evidence given in a condemnation case such as this should have to evaluate, not the actual properties existing, but rather hypothetical properties deprived of crossovers, or other conveniences eliminated under the police power. We hold that opinion evidence as to market values of property as it actually exists in the "before" situation has some probative value, even if the improvements contemplated to be made include some exercise of the police power, as in this case. We believe the proper method of decontaminating such testimony is to establish the degree to which the opinion of value has been influenced by the convenience of access which is eliminated under the police power and then to instruct the jury to disregard such in fixing damages.

█ But even if this were not the rule of law, the result would be the same here, because this motion to strike included too much. City of Gilroy v. Filice, 221 Cal. App.2d 259, 34 Cal.Rptr. 368 (1963); Rose v. State of California, supra; and treatises cited supra. The value testimony of the two appraisers was an integral part of this motion to strike, and the testimony of these witnesses was technically immune as to the motion to strike. Also, the motion included the "after" value of the owners, which was not contaminated for such testimony was given in proper theoretical context, the crossovers in questions neither existing in theory nor in actuality in the "after" situation.

█ The state asserts that it was error to admit into evidence the easement held by the defendants Finley to take water from a well on adjoining property owned by Lloyd Adams and wife, for the reason that the easement granted in writing was one for the " * * * construction, operation and maintenance of a *domestic* well and pipeline * * *." (Emphasis added.)

The answer to this assertion of error is overwhelming. Foremost, there was no objection to the admission of the subject exhibit by the state. But even if objection had been made, the result would be the same. Prior to the introduction of this easement, Mr. Whelan, a witness for the state, had testified that the state was taking in the action an " * * * easement to use water from the well on the Adams property." Mr. Finley was permitted to testify about his easement for water without objection. Certainly the easement was admissible in evidence for some purpose, inasmuch as the state was taking all rights under the document, whatever their nature. There is no requested instruction before us for review. We do not deem it necessary in view of this state of the record to determine whether under the wording of this easement water could have been used for commercial purposes.

The next two questions presented for review concern the recitation of hearsay by value witnesses. Mrs. Wilson, a property owner, was permitted to testify over objection of the state that the Travelodge Motel chain had made "inquiries" as to purchasing the Wilson property as a motel site. Mrs. Oaks, a professional real estate appraiser, was permitted over objection, to testify that her "investigation" revealed that there was an adequate supply of water for the well used by the improvements on the Finley property. Mrs. Oaks identified a document on the letterhead stationery of a construction company (defendants' H in evidence) as being the "log" of water pumped from this well in January and Feb-

ruary of 1957. Subsequently, this "log" was admitted in evidence over the objection of the state.

The admission of this evidence is defended on the basis that a value witness may discuss hearsay testimony in eminent domain cases, not as independent evidence of value, but rather to qualify the expert witness and to establish the basis for his opinion. A statement in State ex rel. Morrison v. Jay Six Cattle Company, 88 Ariz. 97, 102, 353 P.2d 185, 189 (1960), is relied upon. The *Jay Six* decision states that " * * * inquiries * * * received from, people, locally and outside the state, who wanted to buy land in the area, as well as to the terms on which they were willing to make a purchase" were admitted for the purpose of qualifying the expert witnesses and not to prove value. (88 Ariz. at 102, 353 P.2d 185.) There is no authority cited to support this statement made by the court and the point is not discussed in the dissenting opinion. An examination of the briefs in the *Jay Six* case indicates that the admission of such testimony was not one of the issues on appeal. We conclude that this statement of the court was not a holding, but a statement of fact as to the purpose for which such testimony was admitted by the trial court, apparently without objection, as similarly occurred during the trial of this case as to testimony of comparable sales by the real estate appraisers. We do not consider the *Jay Six* decision to be determinative of the question now before us.

There is great diversity of authority in this country as to the degree to which hearsay statements may be used by expert witnesses in condemnation cases.

■ Generally, it is said that ordinary rules of evidence governing civil actions are applicable in eminent domain cases and that

"[h]earsay evidence is inadmissible." 30 C.J.S. Eminent Domain § 428, p. 563. Our Supreme Court has taken a firm view in the general area of expert testimony which, if it is applicable in an eminent domain case, would clearly condemn the testimony under discussion:

"An expert may be allowed, in cases where expert opinion is appropriate, to interpret facts in evidence which the jury are not qualified to interpret for themselves, McCormick, Evidence § 13, p. 28 (1954). He may base such an opinion either on his personal observations given into evidence, Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958), or upon assumption that some portion of the testimony of others already in evidence is true. Patterson v. Chenowth, 89 Ariz. 183, 360 P.2d 202 (1961), Burdick v. Mann, 60 ND. 710, 236 N.W. 340, 82 A.L.R. 1443 (1931). *He must, however, base his opinion only upon competent evidence.*" (Emphasis added) Gilbert v. Quinet, 91 Ariz. 29, 32, 369 P.2d 267, 268 (1962)

In *Gilbert*, our Supreme Court recognized by note 1 of its opinion, which immediately followed the above quotation, that there was an exception in the case of a physician disclosing the history related to him by his patient. Whether and to what extent there is an analogous exception pertinent to professional real estate appraisers and salesmen is a matter which we believe the case law of this state leaves open for decision.

Generally, there are four views in this country as to whether professional real estate appraisers may give the details of comparable sales when the knowledge of the witness is based upon hearsay. The authorities are annotated at 95 A.L.R.2d 1217 et seq., and are divided between (1) those holding that such hearsay evidence is inadmissible on direct examination,[3] (2)

3. State Highway Department v. Wilkes, 106 Ga.App. 634, 127 S.E.2d 715 (1962); State ex rel. State Highway Commission v. Dockery, 300 S.W.2d 444 (Mo.1957); Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass. 189, 138 N.E.2d 769 (1956); Ellis v. Ohio Turnpike Commission, Ohio App., 124 N.E.2d 424, 70 Ohio Law Abst. 417, rev'd on other grounds 164 Ohio St. 377, 131 N.E.2d 397, 58 O.O. 179, cert. denied 352 U.S. 806, 77 S.Ct. 51, 1 L.Ed.2d 39

those authorities holding that such evidence is admissible for the limited purpose only of showing the basis on which the witness arrived at his opinion (this view is referred to in the annotation as the "Texas rule"— 95 A.L.R.2d 1221),[4] (3) those holding that the admission of such evidence lies within the discretion of the trial court[5] and (4) those holding that such testimony may be detailed by the expert witness for general purposes.[6]

A parallel analysis of this divergence of authority is to be found at 27 Am.Jur.2d Eminent Domain § 429, p. 331, at 334. One recent decision appears to favor the "Texas rule" of limited use, City and County of Honolulu v. Bishop Trust Co., 404 P.2d 373, 385 (Hawaii 1965), and another to favor the admissible-for-all-purposes doctrine, State Highway Commission v. Greenfield, 145 Mont. 164, 399 P.2d 989 (1965).

It is to be noted that in Town of Williams v. Perrin, 70 Ariz. 157, 217 P.2d 918 (1950), in passing upon the related but separate problem of whether comparable sales are admissible at all as direct proof, our Supreme Court expressly adopted the "Massachusetts rule," (70 Ariz. at 163, 217 P.2d 918) which permits the introduction of evidence of comparable sales on direct examination, as opposed to the "Pennsylvania rule," holding evidence of comparable sales to be irrelevant except to test the expert witness on cross-examination.[7] If in *Perrin,* our court intended to adopt the Massachusetts view in its entirety, in this area of law, then it is clear that while evidence of comparable sales may be introduced on direct examination as evidence of the value of the condemned property, such evidence of comparable sales must be developed by witnesses who have direct personal knowledge of such sales:

"Although an expert witness may give the reasons for his opinion, even if gained from hearsay, Davenport v. Haskell, 293 Mass. 454, 459, 200 N.E. 409, this should be done in such terms that inadmissible hearsay is not introduced in a manner prejudicial to a party. Without producing a party to the sale, who could be subjected to cross-examination, direct testimony about the terms of a par-

(1955); City and County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, 134 A.L.R. 1120 (1941); Aspegren v. Tax Assessors of Newport, 125 A. 213 (R.I. 1924).

4. State v. Oakley, 163 Tex. 463, 356 S.W. 2d 909, 95 A.L.R.2d 1207 (1962); Baker Brothers Nursery v. State, 357 S.W.2d 163 (Tex.Civ.App.1962), rev'd on other grounds 366 S.W.2d 212 (1963); City of Houston v. Collins, 310 S.W.2d 697 (Tex.Civ.App.1958); City of Houston v. Huber, 311 S.W.2d 488 (Tex.Civ. App.1958); Wichita Falls R. & F. W. R. Co. v. Cooper, 235 S.W. 927 (Tex. Civ.App.1921).

5. United States v. 18.46 Acres of Land, 312 F.2d 287 (2d Cir. 1963); District of Columbia Redevelopment Land Agency v. 61 Parcels of Land in Squares, 98 App.D.C. 367, 235 F.2d 864 (1956); International Paper Co. v. United States, 227 F.2d 201 (5th Cir. 1955); United States v. Katz, 1 Cir., 213 F.2d 799, cert. denied 348 U.S. 857, 75 S.Ct. 82, 99 L. Ed. 675 (1954); United States v. 5139.5

Acres of Land, 200 F.2d 659 (4th Cir. 1952).

6. People ex rel. Department of Public Works v. Alexander, 212 Cal.App.2d 84, 27 Cal.Rptr. 720 (1963); Stewart v. Commonwealth, 337 S.W.2d 880 (Ky. 1960); State Highway Com. v. Parker, 225 Or. 143, 357 P.2d 548 (1960); Recreation and Park Commission, etc. v. Perkins, 231 La. 869, 93 So.2d 198 (1957); New Jersey Highway Authority v. Rue, 41 N.J.Super. 385, 125 A.2d 305 (1956) (by statute); City of Baltimore v. Hurlock, 113 Md. 674, 78 A. 558 (1910).

7. See annotation at 85 A.L.R.2d 110 et seq., comparing the two views, indicating the Massachusetts rule to be the majority and the Pennsylvania rule to be the minority, with Arizona listed in the majority column by reason of the *Perrin* decision, and State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960), both decisions, however, being labeled as "dictum." (85 A.L.R.2d 115.)

ticular transaction should not have been admitted over objection. See Hunt v. City of Boston, 152 Mass. 168, 171, 25 N.E. 82; Commonwealth v. Sinclair, 195 Mass. 100, 106, 80 N.E. 799. See also by analogy Tigar v. Mystic River Bridge Authority, 329 Mass. 514, 519–520, 109 N.E.2d 148." Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass. 189, 138 N.E.2d 769, 776 (1956)

5 Nichols on Eminent Domain § 18.45(1), p. 267, at 268 (3d ed. 1962), indicates that the requirement of personal knowledge in the witness is the general law:

"A witness who has given his opinion as to value may state the reasons for his opinion, and he may of course state as such reasons any circumstances which he would be allowed to give in evidence as independent facts; *but he cannot under the guise of fortifying his opinion state to the jury any facts,* which, either because the facts themselves are not relevant or because his *knowledge of the facts is entirely based on hearsay,* are themselves inadmissible." (Emphasis added)

Jahr, Eminent Domain § 134, p. 207 (1953), is in accord.

California courts, which have been among the more liberal in permitting expert witnesses to detail hearsay in explaining their opinions,[8] are fortified in their results by a statutory provision of which we have no counterpart, Code of Civil Procedure, section 1872:

"Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel."[9]

As indicated above, the body of law under discussion pertains to hearsay testimony of comparable sales by professional real estate appraisers or salesmen. Many of the decisions in this area go to some pains to limit the rule in this regard, as for instance:

"Therefore, confining the effect of this opinion to witnesses whose qualifications include experience in appraising or dealing in real estate *as a business,* we hold that testimony as to the prices paid in comparable sales is not inadmissible merely because it is secondary or hearsay evidence." Stewart v. Commonwealth, 337 S.W.2d 880, 885 (Ky.1960)

There is comparable language in State Highway Commission v. Greenfield, 145 Mont. 164, 399 P.2d 989, 992 (1965).

A landmark decision permitting an expert witness to testify as to his opinion when based on inadmissible sources is National Bank of Commerce v. City of New Bedford, 175 Mass. 257, 56 N.E. 288 (1900), in which Justice Holmes stated:

"An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, *because he gives the sanction of his general experience.* But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible." (Emphasis added) 56 N.E. at 290

That this is the principal reason for the extension of the Massachusetts rule in California, permitting the experts to detail the hearsay upon which their opinions are based, is indicated by the decision of Young v. Bates Valve Bag Corp., 52 Cal.App.2d 86, 125 P.2d 840, 846 (1942), and the cases cited therein.

This case is cited with approval in People ex. rel. Dept. of Public Works v. Donovan, 57 Cal.2d 346, 19 Cal.Rptr. 473, 369 P.2d 1 (1962).

---

8. In McElligott v. Freeland, 139 Cal.App. 143, 33 P.2d 430 (1934), an accountant was permitted to describe an "investigation" conducted through "* * * our New York office * * *" to ascertain that a certain corporation had "* * * no assets and no liabilities * * *" in order to support his opinion that a certain promissory note was worthless.

9. This section repealed by Stats.1965, c. 299, p. 1360, § 60, effective Jan. 1, 1967; comparable provisions now contained in §§ 721, 802, Evidence Code of California.

We know of no substantial body of law which would approve the hearsay testimony admitted in this case. It is to be noted that the testimony as to "inquiries" by Travelodge was elicited, not from a professional appraiser, but rather from the owner of the property.

 Offers to purchase property, when not established to be bona fide, are inadmissible in this state. State v. McDonald, 88 Ariz. 1, 352 P.2d 343 (1960). We believe that a fortiori "inquiries" as to property, at least when testified to by other than a professional appraiser or real estate salesman, are inadmissible. The only possible relevancy of such testimony would be to show that there was a highest and best use of the property for motel purposes. Hearsay may be by conduct. McCormick on Evidence, § 229; Udall, Arizona Law of Evidence, Hearsay § 171, pp. 340–41. The assertion by conduct in this case would be that Travelodge, by its inquiries, considered the subject property to be suitable for motel purposes. Such an assertion should be subject to cross-examination by the opposing party. We hold that it was error to admit such testimony over objection. We reserve the question of whether such error was reversible for later comment.

 As to the admission of the log of the well drilling, again we believe the court erred. Conceding, without holding, that an expert may detail hearsay to a jury, when such is within the scope of his expertise, we know of no authority that would permit a log such as this into evidence for general purposes. It is to be noted that we are at least on the border if not outside of the sanction-of-general-experience concept when a real estate appraiser is permitted to testify as to the adequacy of a water supply.[10]

We do not believe that cases approving testimony as to comparable sales by expert witnesses are controlling as to hearsay of the type under discussion. The very nature of market value makes it more reasonable that hearsay testimony should be admitted, because market value itself is so closely related to what people accept as the going value of an article. See 3 Wigmore, Evidence § 719, pp. 51–54 (3d ed. 1940). The amount of water pumped from a well during a specific period of time is a far more factual object of proof and we see no reason to depart from ordinary rules of evidence designed to safeguard the search for truth.

The defendants seek to justify the ruling of the trial court by arguing that the state waived its hearsay objection to the exhibit when state's counsel thoroughly cross-examined Mrs. Oaks as to her conclusions derived from the subject log.[11]

 No law has been cited holding that cross-examination under these circumstances is a waiver of the hearsay objection, and we reject the contention. In the first

---

10. The following is a part of the cross-examination of Mrs. ———, the appraiser who identified this log:

"Q My question, Mrs. ———, is that for a residential development such as Arizona Sun Sites a plentiful supply of water is absolutely essential and the development couldn't exist without a plentiful supply of water?

"A Yes. Any residential development would need water.

"Q How much water would you figure?

"A Fifteen gallons a day, at the most.

"Q Fifteen gallons a day for a house?

"A Wait a minute. I have to think.

"Q How much water do you use when you flush a toilet?

"A You use several gallons when you flush a toilet. Just a minute."

11. Mrs. Oaks had reached the conclusion that because the particular well had been pumped at the rate of 60 gallons per minute for an average of less than three hours a day over a period of 36 days, it was therefore capable of pumping 86,-400 gallons per day and that in her opinion this water supply was "adequate and reliable."

place, such cross-examination as occurred did not include most of the dates and figures in the "log." Secondly, if an expert witness is to be permitted to detail hearsay for the limited purpose of supporting an opinion, as both counsel at the trial below assumed was proper as to comparable sales testimony by appraisers, then certainly opposing counsel should be permitted to cross-examine thoroughly upon the statements so admitted without authorizing such evidence to be admitted for all purposes, as was done here when the log itself was admitted into evidence over objection without any cautionary instruction as to the use to be made thereof. City and County of Honolulu v. Bishop Trust Co., 404 P.2d 373, 384 (Note 9) (Hawaii 1965); Weymouth v. Colorado Interstate Gas Co., 217 F.Supp. 204 (N.D.Tex. 1962).

■■■ As to whether the admission of this log is prejudicial, Mrs. Oaks testified that her opinion of the Finley property was not affected by her conclusion that the property had an adequate water supply for commercial purposes. However, the inescapable facts of the case tell a different story. In Arizona, probably more than in most areas, without water there can be no life and certainly no commerce. A great deal of the testimony in this case was devoted to the question of whether there was an adequate supply for commercial development of the properties in question. All evidence is to the effect that there was no ground water reservoir below the property and that the waters used upon the properties was either captured from the subsurface flow of washes, or from crevices in the underlying granite structure, or was hauled from other areas. One of the properties taken by the state in this condemnation action was the well in question to which the Finleys had an easement for the use thereof. This was the only existing source of water to the Finley property. Mr. Finley testified that this well and the easement thereto enhanced the value of his property to the extent of $25,000. We are constrained to conclude

that the erroneous admission of this log was prejudicial.

The next question for review presented is whether the trial court erred in permitting Mrs. Wilson to testify as to an oral agreement on the part of the State of Arizona to establish a crossover in front of her property purportedly made at the time of the granting of a written easement by the Wilsons to the State of Arizona in May of 1956. The consideration expressed in the easement, which was admitted as Exhibit "CR," is the sum of $206.50. The easement granted a right of way on both sides of a then existing highway so as to widen it to the 260 foot width that existed at the time of the commencement of this condemnation action. Over objection that the testimony would be a violation of the parol evidence rule and a violation of the statute of frauds, Mrs. Wilson was permitted to testify that there was " * * * additional consideration * * * " for the granting of this easement in that representatives of the State Highway Department had promised to construct a crossover between the two strips of pavement proposed for the new highway so that westbound traffic could crossover to the Wilson guest ranch.

The document in question has the following "conditions":

"1. It is understood and agreed that the amount of money mentioned herein is accepted by the Grantor as full compensation for the land taken as right of way and in settlement for all claims for damage, and for injury or damage to the contiguous land from which the right-of-way is severed, now owned by Grantor, and for his assigns and successors in interest thereof, that may hereafter arise or result from the construction, alteration and maintenance of the road bed, its embankment or grade.

"2. It is further understood and agreed that the present fence on south side of the present road will not be moved during construction at this time nor until future construction necessitates same, but that

the right of way line will be monumented so there can be no misunderstanding as to the new right of way line.

"3. A new paved turn out or entrance shall be contructed at approximate Highway Engineer's Station 724+00 using material from small hill (leveling same off) to make fill for approach.

"4. Necessary side road sign or signs to be put at above mentioned entrance.

"5. The present fence on North side shall not be taken down till new fence is erected.

"6. The water line shown on plans at Station 726+00 which is grantor's water supply shall not be disrupted for more than 48 hours at one time without written consent of grantors."

■ Defendants Wilson contend that the admission of the oral agreement was proper under the doctrine that the true consideration for a deed may always be shown, reliance being made upon Loganbill v. Zook, 38 Ariz. 540, 3 P.2d 273 (1931), Cashion v. Bank of Arizona, 30 Ariz. 172, 186, 245 P. 360 (1926), and upon cases involving equitable actions to reform deeds and other instruments, such as Berardi v. Ohio Turnpike Comm'n, 1 Ohio App.2d 365, 205 N.E.2d 23 (1965). This latter line of cases we distinguish in that the instant action is not one to reform an instrument.[12] As to the *Cashion* and *Loganbill* decisions, we recognize that the law is well established that the nominal consideration expressed in a deed may be varied by testimony as to the true consideration, sections 242, 243, Restatement of Contracts. There are decisions extending this doctrine to deeds which express more than merely nominal consideration, as in *Loganbill*, supra. But we have been cited no case which goes so far as to permit the testimony elicited here.

In *Loganbill*, our court quoted with approval from Jost v. Wolf, 130 Wis. 37, 110 N.W. 232 (1907), in part, as follows:

"Of course deeds vary in form, *and some contain more or less expression of the contractual undertakings of one or both parties*. As to such subjects the written expression, like any other, is exclusive of oral proof." (Emphasis added) 38 Ariz. at 545, 3 P.2d at 274.

■ In the subject document there are expressly set out various acts to be performed by the state in conjunction with the granting of the subject easement. The oral promise of a crossover is of the same general type of promise as several of those contained in the written instrument, and it would have been natural to have included it with the other conditions.[13]

To add a new condition by parol, requiring the state to install a crossover, would be a direct violation of the parol evidence rule. Restatement, Contracts § 237.

■ As to the problem of prejudicial error, we believe there was prejudice. While the professional witnesses employed by the property owners testified that the presence of this crossover had no effect upon their estimate of the value of the Wilson property, common sense indicates otherwise. We agree with Mrs. Wilson that, considering the Wilson property from the standpoint of commercial use, the existence of this crossover was important. The jury may very well have added to the "before" value of the property, by reason of this oral agreement. We are therefore constrained to reverse the Wilson judgment, without regard to whether the admission of the "inquiries" by Travelodge was prejudicial.

12. We similarly distinguish State of Arizona ex rel. Herman v. Tucson Title Insurance Company, Ariz., 420 P.2d 286 (1966), a Supreme Court decision in this area of law released since the drafting of this opinion. This latter case is further distinguishable in that in the *Tucson Title* decision the consideration expressed was nominal ($10 and other valuable consideration).

13. Compare Jamison v. Southern States Life Insurance Company, 3 Ariz.App. 131, 412 P.2d 306 (1966).

The last question for review pertains to whether the court erred in failing to direct a verdict for the state as to the Wilson property, on the grounds that the easement given in 1956, a portion of which is quoted above, was a waiver of the right to compensation for the damage caused by the 1962 highway improvements which are the subject of this condemnation action. Reliance is made upon condition "1" of the easement, which is quoted above, and also the following language in the granting clause reading as follows:

"* * * and waives all claim for damages or compensation for and on account of the establishment and construction of said highway other than set forth herein."

We hold that this easement was intended to cover damages caused by the highway construction performed in 1956, and that it was not intended to cover the additional damage resulting from the taking of access rights in 1962. State ex rel. Ashworth v. State Road Commissioners, 147 W.Va. 430, 128 S.E.2d 471 (1962). We consider the decisions relied upon by the state to be distinguishable either because they relate to damage caused by the specific improvements authorized by the particular easement granted or because the release instruments by their express provisions pertained to the future damage which later occurred. We distinguish Busby v. State, Ariz., 420 P.2d 173, released November 3, 1966, on the basis that the language of the conveyances there construed included "* * * permanent impairment or obstruction of any easements, public utilities service, right of access or right of ingress and egress to the highway from the abutting properties remaining in possession of the Grantor." Language of similar import is lacking in the subject instrument. The instrument in question is on a form prepared by the state and any ambiguity therein should be construed against it. Covington v. Basich Bros. Const. Co., 72 Ariz. 280, 233 P.2d 837 (1951). When interpreted as a whole, we see no intent to release the state from claims for taking of access rights which are the subject of this condemnation action.

We now consider the cross appeal. The defendants Wilson assert:

(1) that the court erred in permitting in evidence the price paid by the Wilsons when they purchased the subject property in 1950;

(2) that the court erred in failing to instruct the jury that a public road could not be acquired by prescription, and

(3) that the damages rendered were inadequate and that the appellate court should therefore grant an additur in an appropriate amount without sending the case back for a new trial.

The last assertion of error we do not rule upon, both because the matter of an additur was not brought to the attention of the trial court, Rule 59(a), Rules of Civil Procedure, 16 A.R.S., and because we are directing a new trial as to all issues.

As to the first two contentions, they seem from the arguments made in the cross appellants' brief to be fairly maintainable and supported by the citation of authority submitted therein. Other than to point out that the cross appellants are not seeking a new trial in the instant action, the state has cited no authority and made no argument in opposition to these two contentions. Though we have been cited no law on this question, we conclude that, though the cross appellants were not seeking a new trial, now that a new trial is to be had, their assertions of error, which are as to problems that will probably present themselves on retrial, should be answered. Inasmuch as the state has filed no authority in opposition, we assume that it was unable to find opposing authority to counter that cited by the cross appellants. Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945); DeHeer v. Seattle Post-Intelligencer, 60 Wash.2d 122, 372 P.2d 193 (1962). Accordingly, we uphold these two contentions and direct that on retrial the court should, unless substantially different factual

foundations be established, exclude the testimony pertaining to the purchase price of the Wilson property in 1950, and should instruct the jury in accordance with the cross appellants' request that a public road cannot be acquired by prescription.

Judgment in these two actions are set aside and the causes are remanded for new trial.

KRUCKER, C. J., and JACK G. MARKS, Judge of the Superior Court, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.