228 So.2d 780

**Laura E. McLEMORE et al.**

**v.**

**ALABAMA POWER COMPANY.**

**5 Div. 829.**

Supreme Court of Alabama.

April 10, 1969.

Rehearing Denied Nov. 20, 1969.

Martin Balch, Bingham, Hawthorne & Williams and Jesse S. Vogtle, Birmingham, Holley, Milner & Holley and Reneau & Reneau, Wetumpka, for appellee.

Howard & Dunn, Wetumpka, for appellants.

COLEMAN, Justice.

The landowner appeals from a judgment awarding compensation and damages for lands condemned and acquired in connection with the construction, operation, and maintenance of a proposed dam, canal, and electric power plant on the Coosa River in Elmore County.

As we understand it, the owner's parcel of land before the taking contained 178.9 acres and after the taking contained 78.3 acres. On the basis of these figures, the condemnor acquired approximately 100 acres. We understand that about 47 acres of the land taken was woodland and the remainder was open land.

The probate court awarded the owner $45,441.00. The condemnor appealed to the circuit court. The cause was tried by a jury which awarded the owner $24,970.-00. Judgment was entered accordingly.

The condemnor made bond as provided by statute and took possession of the prem-

ises on April 4, 1964. The jury returned their verdict on August 26, 1964. After her motion for new trial had been overruled, the owner appealed to this court.

## I.

The owner asserts that the court erred in refusing to give to the jury her requested written charge to effect that the jury should determine the amount of compensation to which she was entitled, then compute interest on the compensation from the date condemnor took possession until the date of the trial, and add the interest so computed to the compensation and bring in a verdict for the total amount.[1]

The landowner also asserts that the court erred in charging the jury orally as follows:

" . . . . the Court charges you, as a matter of Law, the property owners are not entitled to recover interest at all in this particular case, the way it has come up."

The insufficiency of the verdict for failure to allow interest is also made grounds of the motion for new trial.

Appellant states the proposition of law for which she contends as follows:

"WHEN A CONDEMNOR HAS APPEALED TO THE CIRCUIT COURT AND HAS TAKEN POSSESSION OF THE PROPERTY, THE LANDOWNER IS ENTITLED TO INTEREST ON THE AWARD FROM THE TIME HE IS DEPRIVED OF THE USE OF THE LAND AND AWARD UNTIL

---

1. The landowner's requested charge recites:

"Defendant's Charge No. 3

"Gentlemen of the Jury, the landowners are entitled to just compensation by reason of their land being taken. In order to arrive at the just compensation in this case, you should, based on all the evidence, award the landowners the fair market value of the land actually taken plus the decrease in value, if any, to the remaining lands. These values should be

determined from all the evidence as of the time when the application for condemnation was filed by the condemnor. Then you should compute interest at the rate of 6% per annum on the sum of said values, from the time of the actual appropriation of the land by the condemnor until the present time and add such interest to said values in order to arrive at one lump sum as a just compensation. . . . . ."

THE TIME OF THE AWARD IN THE CIRCUIT COURT."

■ By requesting charge 3, appellant properly raised the question.[2] The question is whether the owner is entitled to interest from the time the condemnor takes actual physical possession of the land until the date of the jury verdict. This court answered this question in the affirmative in 1958 by our decision in Jefferson County v. Adwell, 267 Ala. 544, 103 So.2d 143.

In *Adwell*, the court determined and fixed the amount of the owner's compensation and damages without the intervention of a jury. The judgment, as shown in the original record in *Adwell*, recites in pertinent part as follows:

"IT IS HEREBY CONSIDERED, ORDERED ADJUDGED AND DECREED by the Court that Roy H. Adwell, the appellant-landowner herein is entitled to receive of Jefferson County, Alabama, appellee-condemnor, as compensation and damages for the taking of the property hereinafter described, the sum of Forty-six thousand five hundred ($46,500.00) dollars, and

"It is further considered, ordered, adjudged and decreed by the court that the said appellant is entitled to receive of appellee interest at the rate of six (6%) per centum on said sum of $46,500, from the 24th day of March, 1953 until paid, said interest amounting to the sum of $4120.03 as of the date of this decree; and"

Attached to the judgment in *Adwell* is the opinion of the learned trial judge which, as here pertinent, recites:

"This court is of the opinion and finds that the reasonable value (and also the

reasonable market value) of the Adwell property on December 4, 1952, (that being the date on which the petition was filed) was $46,500.

"This court is of the opinion that an award of just compensation to the landowner in this case requires that he be also awarded interest on $46,500 at the rate of 6% per annum from March 24, 1953 (that being the day on which the condemnor took possession of the property) to the day on which this judgment is being rendered. Although the time for the fixation of the value of the property is, as stated above, the day on which the condemnor, filed the petition for condemnation, yet if the condemnor does not interfere with the landowner's possession, use and occupancy of the property until a later time, so that the landowner is allowed to remain in possession and to have the undisturbed use and occupation of the property subsequent to the filing of the petition, interest should not begin until the condemnor takes physical possession of the property. This court thinks that the use and occupation of the land by the owner prior to the condemnor's taking of physical possession of the land should be considered reasonably as having a value equal to the interest.

"The condemnor in this case makes no contention that he is entitled to any credits for any rental value of the property, or any profits made by the landowner from his use of the land, during the period between the day of the filing of the petition for condemnation and the day on which the condemnor took physical possession of the property. As respects the landowner's claim to an award of interest, the condemnor contends that if it is proper that an award of interest

2. This court has said:
"If it should be thought that interest is a proper element of compensation, the trial court should be requested to so instruct the jury. In that way a clear-cut issue would be presented as to the propriety of the jury consider-

ing interest as an element of compensation, thus avoiding any doubt as to whether the jury, in any particular case, did or did not include interest in their award." State v. Jones, 271 Ala. 227, 228, 229, 123 So.2d 107, 109.

should be made, interest should not begin to run until the day on which judgment is rendered in this Circuit Court.

"In accordance with the views expressed above, judgment is being rendered awarding the landowner the sum of $46,500 plus interest thereon at the rate of 6% per annum from March 24, 1953 to the day of this judgment (viz. Sept. 14, 1954) the total sum being $50,-620.03."

The condemnor in *Adwell* strenuously objected to the allowance of interest in that case.[3] The transcript of evidence in *Adwell* closes with the following colloquy between court and counsel, to wit:

"THE COURT: Since the above statement of opinion and colloquy as set forth above had, there has been an additional argument made with reference to the matter of time, the time at which interest should begin. After having reconsidered the question of time as of which the running of interest should begin, I have now come to the opinion that the proper time for interest to begin in this case is March 24, 1953. I am of the opinion that although the time for the fixation of the value of the property is the day on which the petition for condemnation was filed yet if the condemnor does not interfere with the possession, use and occupancy of the property until a later time, so that the owner is allowed to remain in possession and to have the undisturbed use and occupation of the property subsequent to the filing of the petition, interest should not start until the condemnor takes physical possession of the property. It occurs to me that

the use and occupation of the property by the owner prior to the condemnor's taking possession physically of the property has a value that should reasonably be considered as equal to interest. Of course, it necessarily follows that under this view that the condemnor is not entitled to a credit for any rental value of the property or any profits made by the owner for his use of the property during the period of time between the filing of the petition and the physical taking of possession of the property by the condemnor.

"Therefore, the result of this revised view of the Court will mean that the amount of the award to the property owner will be $46,500.00 plus interest thereon at the rate of 6% per annum from and including March 24, 1953, to the day on which judgment is rendered in Circuit Court, which is August 21, 1954.

"Would you gentlemen like to comment any further on that?

"I don't ask you to take any exception, I give you an exception to the judgment.

"MR. BISHOP: I don't think it is necessary, but of course we do except to it. We except to the opinion, and to every word and every phrase thereof, and assure that the Court will be given the grounds and reasons therefor, and will be frankly well-stated in a brief in due course."

On original deliverance in *Adwell*, June 30, 1956, the majority of this court held that " . . . . the 'taking' for the purpose of fixing the amount of damages and

---

3. The appellant (condemnor) in *Adwell* made the following assignments of error:
 "19. The Court erred in awarding any interest on the amount of the award in eminent domain proceedings prior to the date of the order of condemnation in the Circuit Court where the trial was de novo by statute (R. 16–19).
 "20. The Court erred in retroactively awarding interest on an award in eminent domain proceedings from a date prior to

the order of condemnation in the Circuit Court (R. 16–19).
 "21. The Court erred in awarding and ordering to be paid any interest on an award in eminent domain proceedings (R. 16–19).
 "22. The Court erred in awarding interest as a part of the damages and compensation to which the owner was held to be entitled in eminent domain proceedings (R. 16–19)."

compensation is when the commissioners make their report . . . . " (267 Ala. at 548, 103 So.2d at 145) Justices Lawson and Spann dissented. On rehearing, the dissenting opinion by Justice Lawson became the majority opinion and fixed the valuation date as "the date of the filing of the application . . . . " to condemn in the probate court. With respect to the allowance of interest, Justice Lawson said:

"The trial court correctly awarded interest from March 24, 1953, the day on which the property was occupied by the State of Alabama, which was the day on which the land was appropriated by the condemnor and on which it became precluded from abandoning the proceeding. Southern Railway Co. v. Cowan, supra [129 Ala. 577, 29 So. 985]; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884; Haig v. Wateree Power Company, 119 S.C. 319, 112 S.E. 55." (267 Ala. at 555, 103 So.2d at 152)

The instant writer was not a member of this court at the time of original deliverance in *Adwell*, but did participate in the decision on rehearing. So far as the writer recalls, the only question on which the justices expressed different opinions on rehearing was the valuation date. The opinions do not reflect and the writer does not recall that any of the justices disagreed with Justice Lawson's holding as to the allowance of interest.

█ The writer concurred in the result on rehearing in *Adwell*. To lay at rest any doubt as to the holding of the court, we say now that we are' of opinion that the valuation date is the date of filing the application to condemn in the probate court.

█ We are also of opinion that the rule of *Adwell* is correct in allowing interest from the day on which condemnor takes possession of the condemned property until the day of the judgment in the circuit court.

█ Subsequent to *Adwell,* this court has held and we approve the holding that, under the present statutes, the owner is not entitled to interest, on a judgment of the circuit court, awarding compensation, from the date of the judgment to the date of affirmance by this court on appeal. State v. Moore, 269 Ala. 20, 110 So.2d 635; Southern Electric Generating Co. v. Lance, 269' Ala. 25, 110 So. 2d 627.

The condemnor relies on Ex parte Lance, 267 Ala. 639, 103 So.2d 753, as authority that the owner is not entitled to interest as was allowed in *Adwell*. *Adwell* was finally disposed of June 12, 1958. *Ex parte Lance* was finally disposed of June 26, 1958. Five justices, who participated in *Adwell*, participated in *Ex parte Lance* in which there was no dissent. The court did not consider whether any party was or was not entitled to interest. *Adwell* is not mentioned in the opinion. The court did decide in *Ex parte Lance* that a landowner was not entitled to a writ ordering the circuit judge to order a distribution of the condemnation award to the owners' before the appeal to this court had been determined.

The author of the final opinion in *Adwell* was one of the five justices who concurred in the opinion in *Ex parte Lance*. It is hardly reasonable to suppose that five members of the same court, who had concurred in an opinion awarding interest just two weeks before, would concur in an opinion denying such interest two weeks later without making some mention of their reasons for changing their minds. *Ex parte Lance* is not contrary to *Adwell* as to the holding on interest.

There are many cases dealing with allowance of interest to the landowner cited in 96 A.L.R. 150 and 36 A.L.R.2d 413. The general rule is stated as follows:

"It appears to be well settled that the courts generally allow interest as part of the damages, or compensation, to which the owner is entitled when property is

taken under the power of eminent domain." (36 A.L.R.2d at 413)

The following Alabama cases are cited: Jones v. New Orleans & S. R. Co. & Im. Asso., 70 Ala. 227; Mobile & Ohio R. Co. v. Hester, 122 Ala. 249, 25 So. 220; Southern Railway Co. v. Cowan, 129 Ala. 577, 29 So. 985; United States v. Goodloe, 204 Ala. 484, 86 So. 546; Hays v. Ingham-Burnett Lbr. Co., 217 Ala. 524, 116 So. 689; Southern R. Co. v. Clark, 220 Ala. 555, 126 So. 855.

■ The condemnor argues that the cited Alabama cases do not apply here because in those cases the condemnor entered and took possession prior to the institution of condemnation proceedings. The condemnor's argument is to effect that, where the condemnor enters without a judgment of condemnation, the condemnor should be required to pay interest as a sort of penalty or punitive damages. We do not understand that the opinions of this court or of any other court have made this distinction in awarding interest. The better view seems to be that the award of interest, where the condemnor has occupied the property, is to compensate the owner for his loss resulting during the time and from the fact that, during the interest period, he had been deprived of both his property and his payment in money for the property. The annotator expresses it this way:

"The nature of interest payments made to the owner whose property was taken under the power of eminent domain has been discussed in a number of cases. Generally speaking, such payment is either considered as damages for the detention of the compensation or as payment necessary to produce a full equivalent of the value of an award paid contemporaneously with the taking. . . . .

" . . .

"Other cases have held that something in the nature of interest must be included in the award in order to produce the full equivalent of the value of an award paid contemporaneously with the taking.

. . . ." (36 A.L.R.2d at 418, 420)

A good statement of the reason for allowing interest is as follows:

" . . . . If, therefore, the allowance of interest upon the amount of the assessment shall be necessary to make the compensation just, we have no doubt of authority in the court to make it; and we think that, generally, it is necessary, to allow interest from the date of the award, to give to the owner just compensation. While the assessed value, if paid at the date taken for the assessment, might be just compensation, it certainly would not be, if payment be delayed, as might happen in many cases, and as did happen in this case, till several years after that time. The difference is the same as between a sale for cash in hand, and a sale on time." Warren v. First Div. St. Paul & Pacific R. R. Co., 21 Minn. 424, 427.

■ During the time between the condemnor's taking actual possession and the jury's award, the owner is deprived of the use of his land and also of the use of the money due him for the land. The condemnor is also deprived of the use of the money it has paid into court but the condemnor does have the use of the land. When a loss must fall on one or the other of two parties and neither has been guilty of unlawful conduct, it is just that the loss should fall on the party who initiated the proceedings which caused the loss instead of on the party who is wholly without fault and did not initiate the proceedings.

In *Adwell*, the award for compensation and damages was fixed by the court and in the instant case by the jury. There is no other difference. If the landowner is entitled to interest when the award is fixed by the court, the landowner is equally entitled to interest when the award is fixed by the jury. There is no sound reason to award interest in the one case and deny it in the other, or vice versa.

■ We are of opinion that the owner is entitled to interest from the date con-

demnor takes actual possession until the date of the jury's verdict and that the court erred in refusing the owner's requested charge 3 and in giving the oral charge to which the owner excepted.

## II.

Appellant's assignment 43 recites:

"43. The Trial Court erred in sustaining the objection of the Plaintiff to the offer of the Defendant to show by the witness, W. E. Collier, the value of the timber and pulpwood on the whole tract of land involved in the condemnation and on the tract of land actually taken, the offer to show by the Defendant being as follows:

" 'If your honor please, if we propose to show by this witness, first, as to the value of the timber and pulpwood, and second, we propose to show by him the value, the fair market value of the timber and pulpwood on the 100 acres taken by the Power Company as of February 4, 1964, the time of the taking.' "

The court sustained objection as follows:

"THE COURT: I, I sustain the objection to that, then, to those questions, in that form."

■ We think it is clear beyond question that the landowner had the right to show the value of the timber and pulpwood on the land taken. Long Distance Telephone & Telegraph Co. v. Schmidt, 157 Ala. 391, 47 So. 731.

■ We are not persuaded, however, that defendant had a right to show the value of timber and pulpwood on the remaining land unless the owner proposed also to show that the trees on the remaining land would be damaged or destroyed by the taking. We do not understand appellant to say that the trees on the remaining land would be damaged, destroyed, or diminished in value by the taking.

The court pointed out that objection was sustained to the showing "in that form."

"When legal is united with illegal evidence, the court is not bound to separate the good from the bad—but may reject the whole.—Smith v. Zauer [Zaner], 4 Ala. 99." Dryer v. Lewis, 57 Ala. 551, 556.

■ We will not put the court in error for sustaining objection to an offer to show jointly admissible and inadmissible evidence.

## III.

In assignments 41 and 42, appellant assigns for error the action of the court in sustaining objections to two questions propounded to the witness Collier asking him to describe his experience in buying and selling timber and pulpwood.

■ Collier is the witness by whom appellant proposed to prove the matters offered to be shown in assignment 43. Appellant had the right to qualify this witness in order to show the value of the timber and pulpwood on the land taken. As we have already said, however, the court did not err in sustaining objection to the offer to show. Appellant makes the same argument to support assignments 41 and 42 as she makes to support 43. For the same reason we will not reverse on 41 and 42.

## IV.

In assignments 40 and 49, appellant assigns for error the action of the court in sustaining objection to admission in evidence of an aerial photograph. Appellant undertook to lay a predicate for its introduction by two witnesses. The testimony of the witness Till is as follows:

"Q Mr. Till, I'll show you Plaintiff's Exhibit Number Two, Defendant's Exhibit Number Two; I show you Defendant's Exhibit Number Two, and ask you if you can identify that?

"A You mean the McLemore place?

"Q Well, do you recognize--do you recognize what this is a copy, or map, of?

"A Yes, sir.

"Q. Does this accurately portray the McLemore lands that are involved in this condemnation proceeding?

"MR. JESSE S. VOGTLE: I am going to object to that question, Your Honor, because it is not tied down to any specific time.

"MR. WILLIAM B. DUNN, (CONTINUING.)

"Q As of the time that the application was filed, as a part of the McLemore land?

"A Yes, and I--

"THE COURT REPORTER: What, what's his answer? Was it yes?

"MR. WILLIAM B. DUNN: Yes. We offer this in evidence.

"MR. JESSE S. VOGTLE: Your Honor, I object to this. This has not been--he's offered it in evidence. It's not been properly shown to be a-- there's been no authenticity of the photograph itself, which has been tied down. There's been no proper predicate laid to show that the lands on that aerial photograph were, at the time of the taking, in the same condition as on that date, and I submit that it has not been properly proved, for use in this case, as evidence.

"THE COURT: Let me see it, Mr. Dunn.

"MR. WILLIAM B. DUNN: All right, Your Honor.

"MR. C. T. RENEAU: Or when it was taken.

"MR. JESSE S. VOGTLE: There's been no showing what the date of that map is.

"MR. WILLIAM B. DUNN: Judge, he has testified that it accurately portrays the McLemore land, at the time the condemnation was filed.

"(WHEREUPON, MR. WILLIAM B. DUNN HANDED THE AERIAL PHOTOGRAPH MAP TO THE COURT.)

"(WHEREUPON, THE COURT LOOKED AT THE AERIAL PHOTOGRAPH MAP, WHICH WAS HANDED TO IT BY MR. WILLIAM B. DUNN.)

"THE COURT: All right

"MR. JESSE S. VOGTLE: Your Honor, as further grounds, we'd like to state that the admission in evidence of this map would by highly prejudicial.

"THE COURT: Well, I sustain the objection to it.

"MR. WILLIAM B. DUNN: Your Honor, Judge, would you state the reason for the Court's ruling?

"THE COURT: Huh?

"MR. WILLIAM B. DUNN: Because it's prejudicial, or improper predicate?

"THE COURT: No, that's not the reason. The reason for my ruling is because the map, on its face, shows that it's not like it was at the time of the taking. From all of the evidence, undisputed evidence, in the case. So let's proceed.

"MR. WILLIAM B. DUNN, (CONTINUING.)

"Q Does this map accurately portray --?

"THE COURT: Well, now, Mr. Dunn, let me call something to your attention now. I think it's undisputed by both parties, in this suit, so far, that this land was not cultivated this year in which it was taken. I don't think there's any dispute about that, is there, by anybody? It's undisputed.

"MR. WILLIAM B. DUNN: Well, Judge, part of it, I think, is what the evidence shows.

"MR. GEORGE P. HOWARD: Would you hear me on the other, that is as to the part of it that was? Part of it was, Your Honor, I think, is the way it was.

"THE COURT: Well, that's my ruling on it, gentlemen. Like it is, I sustain the objection to the map, at this point."

The testimony of the witness Storrs is as follows:

"Q Defendant's Exhibit Number Two, and ask you if you can recognize what that is?

"A Yes, sir, this is the, what I know as the McLemore place. The creek, Calloway Creek here is the boundary to the Booth property. The Booth property is bounded over in here approximately to the river, and then the river bounds it over to where they join Weaver, and then it comes up Weaver's line, and joins Randolph in here. (Indicating) This here, this land in here is on the North side of the Randolph land. (Indicating)

"Q All right, now. Just in general what is this piece of paper, a map, or photograph, or what kind of a photograph, or what is it?

"A Well, it's an aerial photograph.

"Q Aerial photograph?

"A Yes, sir.

"Q Are you familiar with the lay of the land insofar as the fields, open areas, woods areas, and improvements, such as buildings, and so forth, on this land, as of the 4th. day of February, 1964, before the Power Company took any part of it?

"A Yes, sir. I am thoroughly familiar with it. I've been over the whole works since '56, and then--during that date I hunted all over the place. I've hunted--I've been all over it hunting since that date. Let's see you said--the squirrel season closed the twentieth. You said February the 4th. Yes, I hunted on it along in the last few days of the hunting season, all over every bit of it.

"Q All right. State whether or not this is a true and accurate representation aerial photograph of the scene it purports to portray?

"A Well, it's a, it's a--

"MR. JESSE S. VOGTLE: Your Honor. I object to that, principally, because the question just asked if that photograph is true and correct, according to what it purports to portray.

"THE COURT: I sustain the objection to that.

"MR. GEORGE P. HOWARD: Reserve an exception.

"THE WITNESS: Now, what's the question now?

"MR. GEORGE P. HOWARD: He sustained the objection to it.

"THE COURT: Now, Mr. Howard.

"MR. GEORGE P. HOWARD: Yes, sir.

"THE COURT: Let me clarify that for you.

"MR. GEORGE P. HOWARD: All right, sir.

"THE COURT: Unless you're in a position to have the person here who made that map, and show when it was made, and what section, township, and range it covers, I'm not going to allow it in evidence, and I'll give you an exception to my ruling.

"MR. GEORGE P. HOWARD: All right, sir.

"THE COURT: Because it's not, it hasn't been identified, properly.

"MR. GEORGE P. HOWARD: If Your Honor please, I think I can show all of that, except who made it, and if a part of your ruling is that I must show who made it, I guess I'll just have to--

"THE COURT: When it was made; the elevation of it; how high the airplane was, and all of that. All of that has a bearing on the accuracy of the map.

"MR. GEORGE P. HOWARD: But, but unless I can show who made it, you won't let it in evidence?

"THE COURT: No, sir.

"MR. GEORGE P. HOWARD: I'm going to reserve an exception, then.

"THE COURT: And how it was made, and when it was made.

"MR. GEORGE P. HOWARD: But if I showed all the other things, and still couldn't show who made it, you wouldn't let it in?

"THE COURT: Who made it; when it was made, and how high the airplane was when it was made, and all of that.

"MR. GEORGE P. HOWARD: Well, we reserve an exception, then."

Appellee appears to recognize that the reasons stated by the court were not sufficient to sustain objection to the photograph, but says it "was *not* properly shown to illustrate the condition of appellant's lands as of the date of taking," and the photograph showed land under cultivation whereas the undisputed evidence was that the *"land was not cultivated in the year in which it was taken."*

The witness Till testified that the photograph accurately portrayed the McLemore land "As of the time that the application was filed."

When counsel for appellant asked the reason for the court's ruling, and if the reason was because "it's prejudicial, or improper predicate," the court said "No, that's not the reason. The reason for my ruling is because the map, on its face, shows that it's not like it was at the time of the taking."

The witness Till testified that the photograph did portray the land "As of the time that the application was filed." It was for the jury to decide whether Till or the other witnesses spoke the truth.

Sustaining objection to the appellant's Exhibit 2 was error.

"Photographs identified by a party having personal knowledge of the location as true photographs of the scene, and showing the road, the tree, and other permanent objects in their relation to each other, are properly admitted in evidence. It is not necessary to produce the photographer or other person present who saw the location of the camera, where this is reasonably apparent from the photographs, or where the photograph discloses matters of importance regardless of where the camera was placed. Louisville & N. R. R. Co. v. Hall, 91 Ala. 12, 8 So. 371, 24 Am.St. Rep. 863." Strickland v. Davis, 221 Ala. 247, 252, 128 So. 233, 237.

Appellant has argued a number of other assignments of error but those matters will probably not arise on another trial.

For the errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, HARWOOD, and BLOODWORTH, JJ., concur.

ON REHEARING

BLOODWORTH, Justice.

All the justices are of opinion that the application for rehearing should be overruled.

Due to earnest insistence of counsel that we ought to review other rulings of the

trial court since they are likely to occur on a retrial, we consider the following assignments of error not treated in our original opinion. Since three of the justices do not concur in some of the conclusions reached, the concurrence or dissent of each justice appears at the end of each group of assignments of error (I–IV, inclusive).

## I.

### Assignments of error 25, 27, 30 and 34

As we understand it, the question raised by these assignments is whether in testimony given on direct examination by a real estate expert, he may state the sales prices of "comparable lands" when his testimony is obtained from hearsay sources.[1]

 We are of the opinion that an expert should be permitted on direct examination to state the sales prices of "comparable lands" even though his knowledge of such sales prices is obtained from, or is founded upon, hearsay, for the reason that he should be permitted *to show the basis for his opinion of the value of the land in question.*

 Our court has long recognized that, in part, opinions as to value by expert witnesses may be based on hearsay. In Alabama Consolidated Coal & Iron Co. v. Turner (1906), 145 Ala. 639, 652, 39 So. 603, 606, 117 Am.St.Rep. 61, in a suit by a riparian owner against a mill owner for taking water from, and polluting, a stream, our court said:

"There was no error in allowing the witness, Lackey, to state what in his opinion was the market value of this mill property June, 1902. The market price of property being a conclusion which is largely made up of presumptions, may always be proved by the opinions of witnesses based, of necessity even in fact on hearsay. Burks v. Hubbard, 69 Ala.

380; E. T. V. & G. R. R. Co. v. Watson, 90 Ala. 44, 7 South. 813."

As aptly stated in International Paper Co. v. United States, 227 F.2d 201 (5 Cir. 1955):

"On the threshold of this discussion, we consider it well established that, typically, the fair market value of real estate is proven by expert witnesses. Such experts must base their opinions on such information in the art that accounts for their becoming experts. Such opinions are based on their knowledge of other sales comparable in type, location and size, their knowledge of the likely demand for such property and their knowledge of the market conditions prevailing in the area in which the land lies. Because of the nature of expert testimony on value, a certain amount of hearsay is a necessary ingredient of the opinion which is the product of the expert's study. * * *"

That there are four views in this country as to the admissibility of such evidence seems clear. See, Annotation at 12 A.L.R.3d 1064, "ADMISSIBILITY OF HEARSAY EVIDENCE AS TO COMPARABLE SALES OF OTHER LAND AS BASIS FOR EXPERT'S OPINION AS TO LAND VALUE"; State ex rel. Herman v. Wilson (1967), 4 Ariz.App. 420, 420 P.2d 992; 5 Nichols on Eminent Domain, 3d Ed., §§ 18.4, 18.42, 18.45.

One view strictly applies the hearsay rule; the second holds the evidence admissible for the limited purpose of showing the basis of the witness' opinion (the so-called "Texas Rule"); the third holds the admission of such evidence is discretionary with the trial court; and, the fourth that such evidence may be admitted for general purposes.

We think the more recent and better reasoned cases follow the "Texas Rule." As a matter of practice, in the trials of

---

1. The question of admissibility of profferred testimony as to "comparable" lands is, under our decisions, a matter for determination by the trial court. Popwell v. Shelby County, 272 Ala. 287, 130 So. 2d 170, 87 A.L.R.2d 1148; Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308.

most condemnation cases neither party is too concerned with "comparable sales" as hearsay—what the opposing parties are concerned about, and that at which they direct their attacks, is the question of comparability of the respective tracts of land.

See, jurisdictions which follow the "Texas Rule" listed at 12 A.L.R.3d 1068. See also, State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., 381 S.W.2d 20 (Mo.Ct.App.1964); State ex rel. State Highway Commission v. Barron, 400 S.W.2d 33 (Mo.1966); State Highway Commission v. Fisch-Or, Inc., 406 P.2d 539 (Or.1965); Cohn v. State, 438 S.W.2d 860 (Civ.App.Texas, 1969); Forest Preserve District of Du Page County v. Harris Trust and Savings Bank, 108 Ill.App.2d 65, 247 N.E.2d 188 (1969).

Some of the reasons for following the "Texas Rule" are enumerated in United States v. 60.14 Acres of Land, etc., 362 F. 2d 660 (3 Cir. 1966), viz:

"* * * A real estate appraiser, no matter now well qualified he may be in general, therefore, is not an expert on the value of property which is unknown to him or is situated in an area which is unfamiliar to him. United States v. 13,255.53 Acres of Land, 158 F.2d 874 (3 Cir. 1946). Instead the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser.

"This does not, however, mean that one who has the necessary training, experience and skill and has familiarized himself retrospectively with the necessary data cannot form an expert opinion of value which is substantially superior to that of the average man and therefore useful to the jury. All opinion evidence of market value is to some extent inherently speculative (see Kimball Laundry Co. v. United States, 338 U.S. 1, 6, 69 S.Ct. 1434, 93 L.Ed. 1765, [7 A.L.R.2d

1280] (1949); United States v. Miller, 317 U.S. 369, 374–375, 63 S.Ct. 276, 87 L.Ed. 336, [147 A.L.R. 55] (1943)), for it seeks to describe in the form of a realistic event what is a theoretical construction,—something which in fact did not occur. Indeed while the expression of opinion of market value based on retrospectively obtained information may seem on the surface to be of inferior quality, it would be naive to suppose that the local expert is not himself obliged to resort to the records of prior transactions, for they obviously are not all matters within his current recollection. The distinction between contemporaneously and retrospectively acquired information is an artificial one, and at the most would affect only the weight of the expert's opinion. In the often quoted words of Chief Judge Parker, 'Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their everyday affairs hinder rather than help them at arriving at a just result. In no branch of the law is it more important to remember this, than in cases involving the valuation of property, where "at best, evidence of value is largely a matter of opinion". See Montana R. Co. v. Warren, 137 U.S. 348, 352, 11 S.Ct. 96, 34 L. Ed. 681 * * * [1890].' * * *"

LAWSON, SIMPSON, MERRILL, HARWOOD and MADDOX, JJ., concur.

LIVINGSTON, C. J., COLEMAN and McCALL, JJ., dissent.

## II.

*Assignments of error 29 and 37*

As we understand it, these assignments raise the issue whether certified copies of deeds of allegedly "comparable lands" offered to show the sales prices are admissible, although this evidence is hearsay

We are of the opinion that an expert "may take into consideration the con-

sideration stated in a deed" as one of his sources of information, just as he could consider oral statements of the sales price made to him by persons familiar with the transaction stating the sales price, as we have already indicated we hold. State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., 381 S.W.2d 20, 24 (Mo.Ct.App.1964), supra. We can see no good reason why a party should not be permitted to introduce in evidence certified copies of deeds solely for the purpose of showing the basis for the opinion of the real estate expert as to the value of the land in question although such evidence is not considered as primary evidence of the sales price of the property. When such evidence is allowed, the other party would be entitled to a limiting instruction to the jury.

LAWSON, MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.

LIVINGSTON, C. J., SIMPSON and COLEMAN, JJ., dissent.

### III.

#### Assignments of error 23, 26, 28, 31, 32, 33, 54 and 55

These assignments charge error on the part of the trial court with respect to several questions relating to "comparables" addressed to an expert real estate witness. If there is another trial, it is not likely these questions will arise again in their present forms. We do not, therefore deem it appropriate to deal with these evidentiary questions at this time.

All the Justices concur.

### IV.

#### Assignments of error 35 and 21

With respect to assignment of error 35, it appears that during direct examination of appellee's expert real estate witness, and prior to his testifying what his investigation disclosed as to a sale of certain other land, appellant made a request to "cross-examine" (examine on "voir dire") the witness with respect to certain matters the witness had found in his investigation. The trial court overruled this request saying to appellants' counsel that he would have ample time "to do it" on counsel's cross-examination of this witness.

We are of the opinion that such request for "voir dire" examination addressed itself to the discretion of the trial court and that no abuse of discretion is shown in this instance. State v. Wilbanks, 5 Div. 869 [MS] (Oct. 9, 1969). We suggest that the better practice in such a situation would be to allow examination on "voir dire."

In assignment of error 21, appellants complain of the giving of appellee-condemnor's written requested charge No. P–4, the pertinent portions of which instructed the jury that "the measure of the compensation and damages to be awarded the landowners in this case for the taking of this property is the difference in the fair cash market value of the landowners' entire tract of land immediately prior to and at the time of the taking of such property and the fair cash market value of the tract of land remaining to the landowners immediately after the time of taking of such property * * *."

Appellants say that giving this charge is reversible error because it fails to mention that "enhancement" in value to remaining lands shall not reduce the compensation for the land taken. Appellants contend this omission leaves the jury to consider "enhancement" in value to the remaining lands due to construction of the canal which appellee proposed to build. Appellants admit there was no evidence from the witness stand to show "enhancement" but they say the jury "viewed" the property and could have considered the prospects of industrial sites along the canal which they may have felt enhanced the value of the remaining tract. Appellants say, therefore, the

charge is in conflict with Title 19, § 14, Code of Alabama 1940 [2] which provides in effect that "enhancement" to remaining lands (except in highway condemnations) shall not reduce the compensation for the taking.

 We hold that omission of a statement of the law regarding "enhancement" from the charge No. P–4 did not make the giving of the charge error for the reason that there was no evidence from the witness stand as to "enhancement." We will not presume that the jury's viewing the premises supplied evidence of "enhancement" which is otherwise lacking.

We do not decide whether there may be other reasons for holding that the charge was given without error.

All the Justices concur.

Opinion extended and application for rehearing overruled.

All the Justices concur.

COLEMAN, Justice (dissenting in part):

I dissent from the majority with respect to certain errors as indicated below.

*Assignments 25, 27, 30, and 34*

Appellant asserts that the trial court erred in admitting, over objection, testimony that similar land had been sold for a certain price.

Appellee's expert witness, a land appraiser, was permitted to testify on direct examination that certain allegedly similar and comparable tracts of land had been sold for certain prices. For example, the witness testified that, in his appraisal of the lands of appellant, the witness had consid-

ered a sale of other land, one hundred acres, sold in 1961 by Mary Catherine Storrs Jackson, grantor, to Ralph Bryant and E. C. Mercer, grantees. The evidence is clear that the witness did not participate in the sale and his only knowledge of the price paid by the grantees is derived from what someone told the witness or what the witness learned by looking at the record where the deed from Jackson to Bryant and Mercer is recorded in the office of the judge of probate.

The ruling complained of in Assignment 25, which relates to the Jackson sale, appears in the transcript as follows:

"Q Thank you, sir. Now, what was the sales price of that property?

"MR. GEORGE P. HOWARD: We object to that, if Your Honor please, on the grounds that it calls for hearsay; on the grounds that it is not shown; he is not shown to have had actual knowledge of it; on the grounds that the land hasn't been shown to have been comparable land, similarly situated on the ground; that it hasn't been shown to be a voluntary, free sale; on the grounds that he has no personal knowledge of this sale, by his own testimony.

"THE COURT: Well, the thing that's worrying the Court about it, just to be frank with you, is_____which is the date of the sale?

"MR. JESSE S. VOGTLE, (CONTINUING.)

"Q What is the date of the sale?

"A March the 30th., 1961.

"THE COURT: I'll overrule your objection.

2. "The amount of compensation to which the owners and other parties interested therein are entitled must not be reduced or diminished because of any incidental benefits which may accrue to them, or to their remaining lands in consequence of the uses to which the lands to be taken, or in which the easement is to be acquired, will be appropriated; provided

that, in the condemnation of lands for ways and rights of ways for public highways, the commissioners may, in fixing the amount of compensation to be awarded the owner for lands taken for this use, take into consideration the value of the enhancement to the remaining lands of such owner that such highway may cause."

"MR. GEORGE P. HOWARD: Reserve an exception.

"MR. JESSE S. VOGTLE, (CONTINUING.)

"Q If you would, state the consideration of that, please, sir?

"A The deed consideration states Twenty Thousand Dollars. My--------

"MR. GEORGE P. HOWARD: Now, if Your Honor please, we move that that ------we object to that part of it as not being responsive, what part the consideration shows on the deed------

"MR. JESSE S. VOGTLE: Well, he wasn't through answering the question, Your Honor. He was------

"THE COURT: Let him answer the question, and then object, or move to exclude it.

"MR. GEORGE P. HOWARD: All right, sir.

"MR. JESSE S. VOGTLE, (CONTINUING.)

"THE WITNESS: In my investigation of this transaction, it showed that an additional One Thousand Dollars was paid to a tenant, who had a prior interest in the form of a Lessee's interest, on this property, so the total purchase price for the one hundred acres was Twenty-One Thousand Dollars, confirmed by the grantee."

The condemnor argues that the hearsay testimony as to sales price is admissible because a party should be permitted to show by the expert witness the basis on which he arrived at his opinion of value. Under the so-called Texas rule, some courts so hold. Some of the federal circuits appear to hold that the trial court has discretion to admit hearsay sales price testimony. A most helpful annotation on the question appears in 95 A.L.R.2d 1218.

" . . . . 'As a general proposition, what one man says not upon oath, can

not be evidence against another man. . . . . '" Mobile & Montgomery Railroad Co. v. Ashcraft, 48 Ala. 15, 30.

A further objection to hearsay is the absence of opportunity to cross-examine the person who allegedly made the hearsay statement.

A number of courts have held that testimony by an expert witness stating the sales price of comparable land is not admissible on direct examination where the testimony is founded on hearsay.

An Ohio court said:

"In examining the record, we find that in one instance a witness for the Commission,—Mayer,—testified on direct examination as to the sale of twenty-five acres on Bryne Road, the record showing that the witness based his testimony on tax stamps affixed to the deed. We have previously ruled that such testimony predicated solely upon examination of tax stamps is inadmissible." (Ellis v. Ohio Turnpike Commission, 124 N.E.2d at 434) "In Re Appropriation of Property of Ellis (1955, App.) 70 Ohio L.Abs. 417, 124 N.E.2d 424, revd. on other grounds in Re Ohio Turnpike Com., 164 Ohio St. 377, 58 Ohio Ops. 179, 131 N. E.2d 397, app. dismd. and cert. den. Ellis v. Ohio Turnpike Com., 352 U.S. 806, 1 L.Ed.2d 39, 77 S.Ct. 51, reh. den. 352 U.S. 945, 1 L.Ed.2d 240, 77 S.Ct. 260." (95 A.L.R.2d 1221)

The Supreme Court of Colorado has said:

"Counsel for the city complain that its expert witnesses were not permitted to testify as to the amounts of the considerations recited in recorded deeds between third persons covering property in the vicinity allegedly similar to that of defendants, or as shown by the revenue stamps affixed thereto, or gained by them from conversations with third parties who were not witnesses, as partially showing the basis upon which such witnesses arrived at their estimates of the

market value of the lands taken. This contention is without merit. 'Proof of sales must be made by witnesses testifying directly to the facts, not by the consideration recited in deeds between third parties.' Lewis on Eminent Domain, 3d ed. vol. 2, page 1143, § 662. See, also, Central R. R. Co. v. State Tax Dept., 112 N.J.L. 5, 169 A. 489; Rose v. City of Taunton, 119 Mass. 99, and O'Hare v. Chicago, etc., R. R. Co., 139 Ill. 151, 28 N.E. 923. 'A witness who has given his opinion as to value may state the reasons for his opinion, and he may of course state as such reasons any circumstances which he would be allowed to give in evidence as independent facts; *but he cannot under the guise of fortifying his opinion state to the jury any facts which, either because the facts themselves are not relevant or because his knowledge of the facts is entirely based on hearsay, are themselves inadmissible.*' Nichols on Eminent Domain, 2d Ed., vol. 2, p. 1188, § 453." City and County of Denver v. Quick, 108 Colo. 111, 113 P. 2d 999, 134 A.L.R. 1120, 1124, 1125.

The Georgia Court of Appeals said:

"Condemnee objected to the allowance of such evidence upon the ground that it would be hearsay. The court sustained the objection, and special ground 2 of the motion for new trial assigns this ruling as error upon the ground that '[t]he exclusion of said evidence prevented movant from showing the value of comparable lands for their [the jury's] consideration in arriving at the market value of the land sought to be condemned.'

"The court did not commit error. We do not have involved here the rule announced in Garner v. Gwinnett County, 105 Ga.App. 714, 125 S.E.2d 563; Gulf Refining Co. v. Smith, 164 Ga. 811 (4), 139 S.E. 716; and Landrum v. Swann, 8 Ga.App. 209, 68 S.E. 862, that a witness may give his opinion as to the value of property although his testimony rests upon hearsay. Nor do we have a ruling which prevented the condemnor from showing by competent evidence the value of lands similar to that being condemned. (Citations Omitted) But we are concerned with the question of who is a proper person to testify to the facts sought to be elicited from this witness. While this witness, who was qualified as an expert, could give his opinion as to the value of the property based upon his investigation, although his opinion may have been formed on the basis of hearsay, he could not testify as a fact that a specific piece of property comparable to the condemnee's property was sold at a certain amount when he had no actual knowledge of such fact except what someone, not a party to the suit, told him. It follows, of course, that a witness must have actual knowledge of a fact before it is proper to allow him to testify positively as to the existence of such fact. Code § 38–301. Special ground 2 is not meritorious." State Highway Department v. Wilkes, 106 Ga. App. 634, 636, 637, 127 S.E.2d 715, 717.

The Supreme Judicial Court of Massachusetts said:

"A real estate witness, called by the Authority, who, from the record, does not appear to have had special experience in determining the value of the type of camp property here involved, was permitted to testify to the limited value of the property for conventional residential purposes. No objection was made to the admission of this evidence, but exception was taken to his being allowed to give the price at which a nearby property (not shown to have been similarly used for camp purposes) had been sold in 1951, at least three years before the taking, because the witness had only hearsay knowledge of the price paid in a transaction in which he had not participated. Although an expert witness may give the reasons for his opinion, even if gained from hearsay, Davenport v. Haskell, 293 Mass. 454, 459, 200 N.E. 409, this should be done in such terms that inadmissible hearsay is not introduced in

a manner prejudicial to a party. Without producing a party to the sale, who could be subjected to cross-examination, direct testimony about the terms of a particular transaction should not have been admitted over objection. See Hunt v. City of Boston, 152 Mass. 168, 171, 25 N.E. 82; Commonwealth v. Sinclair, 195 Mass. 100, 108, 80 N.E. 799. See also by analogy Tigar v. Mystic River Bridge Authority, 329 Mass. 514, 519–520, 109 N.E.2d 148." Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass. 189, 199, 138 N.E.2d 769, 776.

I am of opinion that the holding of the courts whom I have quoted is supported by the better reasoning.

We are not here concerned with testimony of an expert trading in a fungible commodity such as cotton, as in Burks v. Hubbard, 69 Ala. 379.

There is a statement near the end of the opinion in State v. Sharp, 278 Ala. 668, 670, 180 So.2d 264, 266, that " . . . . we have held that on the question of admissibility of evidence of the sales prices of other lands voluntarily sold and the question of similarity, much must be left to the discretion of the trial court. Popwell v. Shelby County, 272 Ala. 287, 130 So.2d 170, 87 A.L.R.2d 1148."

*Sharp* cannot be authority that hearsay sales price evidence is admissible because only one assignment of error was argued in *Sharp*, that assignment was that the trial court erred in sustaining objection to an exhibit offered by appellant, and this court affirmed.

In *Popwell*, no question was presented as to the admissibility of hearsay sales price evidence. This court, citing Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308, did say " . . . . that on the question of similarity much must be left to the discretion of the trial court . . . ." (272 Ala. at 292, 293, 130 So.2d at 175), but nothing was said relating to the admissibility of evidence to prove the actual price for which similar lands had been sold.

In *Leibacher*, the court held in paragraphs [19, 20] and [24] that the trial court was not in error in sustaining objection to questions, propounded to the condemnee and his wife, seeking to show the price that the condemnee had paid for the condemned property ten years prior to the taking. *Leibacher* is not contrary to what I have said here.

I am of opinion that the rulings complained of in Assignments 25, 27, 30, and 34 were error.

LIVINGSTON, C. J., and McCALL, J., concur.

### Assignments 29 and 37

Over appellant's objection, the court permitted appellee to introduce into evidence a copy of the record of the deed executed by Mary Catherine Storrs Jackson to Bryant and Mercer in the sale mentioned above, and also a copy of the record of another deed showing a sale of other allegedly similar land by strangers to this suit. The judge of probate certified that these exhibits were true and correct copies of the records in his office.

In a Rhode Island tax assessment case, the value of certain land was the point in issue. On this issue, the trial judge considered evidence as to the amount of revenue stamps placed on certain deeds evidencing sales of other tracts of similar land. The Supreme Court of Rhode Island held that this was not *reversible* error because, in respect to four of the sales, the broker who conducted them testified of his own knowledge as to the amount of the consideration in each case and the testimony as to the revenue stamps did not sufficiently prejudice appellant so as to require reversal. The court did hold that considering the evidence as to revenue stamps was erroneous and had this to say:

"For the purpose of establishing the consideration paid in sales of a number of

other estates of the same general character as that of the petitioner within a year of the assessment, the justice considered evidence as to the amount of revenue stamps which had been placed on the deeds evidencing those transactions. These rulings were erroneous. Evidence as to the acts of strangers to this proceeding is not competent to affect the rights of the respondents. If the sales were fair and made in a fair market it would be proper to show the price for which such sales had been made, as bearing upon the question of the market value of the petitioner's estate. This should be by means of sworn evidence from witnesses having a knowledge of the transactions, who would be subject to cross-examination.

"The rulings of the justice in this regard are not supported by a presumption that the persons placing the revenue stamps upon the deeds were strictly complying with the federal revenue laws. . . . ." Aspegren v. Tax Assessors of City of Newport (R.I.), 125 A. 213, 215.

In the instant case, the recital of the consideration in the copy of the deed received in evidence is nothing more than a statement by the party signing the deed that the consideration was the recited number of dollars. The parties to the deed are not parties to this suit nor in privity with the appellant. The party signing the deed was not available for cross-examination by appellant. I have already undertaken to show that testimony, to the effect that a person not present in court had made oral statements stating the sales price, is hearsay and not admissible. It would not have been permissible for appellee's witnesses to testify as to the ex parte oral statements of the parties who signed the deeds ". . . . and 'a statement otherwise objectionable as hearsay does not become competent because it has been reduced to writing.' 31 C.J.S. Evidence, § 194, page 930; Ex parte McLendon, 239 Ala. 564, 195 So. 733; Southern Life & Health Ins. Co. v. Wil-

liams, 230 Ala. 681, 163 So. 321." Thornton v. City of Birmingham, 250 Ala. 651, 655, 35 So.2d 545, 547, 7 A.L.R.2d 773.

I am of opinion that admission of the copies of the deeds was error.

LIVINGSTON, C. J., and SIMPSON, J., concur.