The opinion of August 18, 2006, is withdrawn and the following is substituted therefor.
On April 23, 2003, the City of Homewood filed in the Probate Court of Jefferson County an application for an order of condemnation. The application was to condemn certain property, formally described as Lot 1 of University Park West, owned by Samford University. At the same time, Homewood filed a notice of lis pendens, pursuant to § 18-1A-75, Ala. Code 1975, giving prospective purchasers and encumbrancers of the property notice of the condemnation action. On August 28, 2003, *Page 65 
the probate court entered an order granting the application for the order of condemnation and appointing commissioners to assess the compensation to which Samford was entitled. §§ 18-1A-279 through-281, Ala. Code 1975. On November 4, 2003, the probate court recorded the report of the commissioners, which awarded Samford $1,500,000 as compensation for the condemnation of Lot 1. On November 10, 2003, the probate court then entered its order confirming the report of the commissioners and condemning the land upon payment of the award.
On November 21, 2003, Samford filed a notice of appeal in the Jefferson Circuit Court for a trial de novo from the order of the probate court confirming the report of the commissioners and condemning the land upon payment of the award. Five days later Samford amended its notice of appeal to challenge Homewood's right to take the property. On February 19, 2004, Homewood paid into the probate court the sum of $1,505,054, the amount of damages and costs assessed by the probate court's November 10, 2003, order. On February 19, Homewood posted in the probate court an appeal bond in the sum of $3,000,000, i.e., double the amount of the assessed damages. See § 18-1A-284, Ala. Code 1975. On that date, the probate court issued an order, stating:
 "[T]he Court acknowledges receipt of the amount of damages and costs in the amount of One Million, Five Hundred Five Thousand, Fifty-four Dollars ($1,505,054.00) and the posting of a bond in the amount of Three Million Dollars ($3,000,000.00), and does determine that such bond is made with good and sufficient sureties and the Court does, by the execution of this Order, approve such sureties and does order that the City of Homewood has the right of entry upon the property described in the Order (the `Property') pending the appeal, which has been taken by Samford University as owner of the Property to the Circuit Court of Jefferson County, Alabama.
 "That the City of Homewood is entitled to the right of entry upon the Property and to take possession of and to use the Property pending the appeal in the Circuit Court of Jefferson County."
On April 12, 2004, the probate court certified and transferred to the circuit court various documents pertaining to the condemnation and checks in the amount of $1,500,000. On June 10, 2004, Samford moved the circuit court to invest the $1,500,000. On June 23, 2004, the circuit court granted Samford's motion and directed that the $1,500,000 be placed in an interest-bearing account.
On March 15, 2005, Homewood moved for a summary judgment. On April 22, 2005, the circuit court entered a summary judgment for Homewood declaring that Homewood had a right to condemn the property. The case then went to trial on the compensation issue.
On July 14, 2005, following a jury trial, the jury awarded Samford $2,650,000 as just compensation for the property. The circuit court entered its order on that verdict on July 14, 2005. On August 10, 2005, Homewood deposited $1,150,000, the difference between the jury verdict of $2,650,000 and the commissioners' award of $1,500,000 previously deposited with the clerk of the Jefferson Circuit Court. On August 26, 2005, Samford filed a motion requesting that the circuit court invest the $1,150,000 deposited by Homewood on August 10, 2005, in an interest-bearing account. The circuit court granted Samford's motion and ordered the $1,150,000 be deposited in an interest-bearing account.
On October 12, 2005, the circuit court entered a final judgment, awarding Samford *Page 66 
$2,650,000 for Lot 1 and setting the amount of interest awarded. On October 21, 2005, Samford moved to alter or amend the final judgment. Homewood responded, and on November 18, 2005, the circuit court amended its judgment as to the amount of the interest award. The circuit court in its amended judgment held that Samford was not entitled to prejudgment interest because, it reasoned, Homewood had not taken actual or physical possession of the property. Samford appealed.
 Standard of Review
The facts of the case are not in dispute. The dispute involves when Homewood's actions constituted a legal taking of Samford's property; therefore, this Court is presented with a question of law. Thus, there is no presumption of correctness in favor of the circuit court's judgment, and this Court's review of the legal issues presented is de novo. Allstate Ins. Co. v.Skelton, 675 So.2d 377 (Ala. 1996).
 Analysis
In 1985 the Alabama Legislature passed the Eminent Domain Code, §§ 18-1A-1 through 18-1A-311, Ala. Code 1975. The Eminent Domain Code provided for prejudgment interest on condemnation awards, to be computed from the "date of valuation" to the date of the circuit court's judgment. Williams v. AlabamaPower-Co., 730 So.2d 172, 175 (Ala. 1999). Before the enactment of the Eminent Domain Code, prejudgment interest was an element of compensation to be determined by the jury.McLemore v. Alabama Power Co., 285 Ala. 20,228 So.2d 780 (1969); Southern Natural Gas Co. v. Ross,290 Ala. 195, 275 So.2d 143 (1973).
In 1995, the legislature amended the Eminent Domain Code to address only postjudgment interest, providing that the judgment would include interest at the 52-week United States Treasury Bills rate. § 18-1A-211, Ala. Code 1975. It was again amended in 2004. Section 18-1A-211 now provides, in pertinent part, as follows:
 "[T]he judgment shall include interest at a rate equal to the most recent weekly average one-year constant maturity yield, as published by the Board of Governors of the Federal Reserve System, upon the unpaid portion of the compensation awarded. The interest shall commence to accrue on the date of entry of the judgment."
(Emphasis added.)
Clearly, the language in § 18-1A-211, Ala. Code 1975, as amended in 1995, does not provide for prejudgment interest. The Commentary to § 18-1A-211, however, was not amended to reflect this change; it states that § 18-1A-211 addresses prejudgment, rather than postjudgment, interest. This Court, in an opinion issued four years after § 18-1A-211 was amended to delete the reference to prejudgment interest, held that prejudgment interest was a component of the just compensation mandated by the Alabama Constitution for a taking of private property. Williams v. Alabama Power Co., supra.
Today, we are presented with the following question — when does prejudgment interest begin to run on a condemnation award? Our analysis requires us to address the history of prejudgment interest on compensation awards, which this Court has not addressed since the 1995 amendment to § 18-1A-211, Ala. Code 1975, and the legislature's apparent repeal of the statutory provision for prejudgment interest on a compensation award.
In 1969, before the enactment of the Eminent Domain Code, this Court addressed the issue of when prejudgment interest begins to run on a condemnation award. In McLemore, supra, Alabama *Page 67 
Power Company both posted bond and took possession of the disputed premises on the same day. Under those circumstances, this Court held, in accordance with the rule implemented inJefferson County v. Adwell, 267 Ala. 544, 103 So.2d 143
(1958), that "the owner [of the condemned property] is entitled to interest from the date [the] condemnor takes actual possession until the date of the jury's verdict."McLemore, 285 Ala. at 27-28, 228 So.2d at 787. This Court reasoned that it is more just for the party who initiated the condemnation proceedings to bear the risk of loss than the "party who is wholly without fault and [who] did not initiate the proceedings." 285 Ala. at 27, 228 So.2d at 787. This Court explained this rationale as follows:
 "During the time between the condemnor's taking actual possession and the jury's award, the owner is deprived of the use of his land and also of the use of the money due him for the land. The condemnor is also deprived of the use of the money it has paid into court but the condemnor does have the use of the land."
McLemore, 285 Ala. at 27, 228 So.2d at 787.
Four years later this Court expounded upon the question of when prejudgment interest begins to run in Southern NaturalGas, supra. This Court held that the date the prejudgment interest on the condemnation award begins to run is the day the bond is approved because that is the day the condemnor attains authority to enter the land. Recognizing that § 235, Ala. Const. 1901, provided that municipal corporations and other entities and individuals entitled to take property for public use may pay a bond into court in double the amount of damages assessed in order to gain the right of entry upon the disputed property, this Court reasoned:
 "When this bond in double the amount of the award was approved, the condemnor for the first time had the right to enter the land and start to work. That was the first time in this proceeding that the owners lost the right to use the condemned strip as they pleased. This was the first day on which interest could have started, and we think that the interest should have been computed from the day the bond was approved and filed, July 26, 1965."
Southern Natural Gas, 290 Ala. at 199,275 So.2d at 146.
This Court also held, however, that in the rare circumstance in which the condemnor takes possession before filing a condemnation proceeding, the prejudgment interest would begin to run as of the date of the condemnor's entry upon the property.Southern Natural Gas, 290 Ala. at 200,275 So.2d at 147; see also Southern Ry. v. Cowan, 129 Ala. 577,29 So. 985 (1901).
Southern Natural Gas remained determinative as to the issue of when prejudgment interest begins to run until 1985, when the Alabama Legislature enacted the Eminent Domain Code. Section18-1A-211(a) of the Eminent Domain Code, as enacted in 1985, provided that prejudgment interest "shall commence to accrue at the date of valuation." Following the passage of the Eminent Domain Code, this Court held that "the valuation date is the date the application to condemn is filed in the probate court."State v. McGee, 543 So.2d 669, 671 (Ala. 1989).
This was the rule until § 18-1A-211(a)4 was amended in 1995 to address only post-judgment, rather than prejudgment, interest. Four years after the amendment to § 18-1A-211(a), this Court held that although Alabama was now without a statutory provision specifically providing the right to prejudgment interest in a condemnation *Page 68 
action, prejudgment interest Was a part of the just compensation mandated by the Alabama Constitution for a taking of property. Williams v. Alabama Power Co.,730 So.2d at 174-76. This Court held that prejudgment interest was to be calculated "from the date of the taking." Williams,730 So.2d at 178. This Court in Williams, did not, however, address what constituted "the date of the taking" but stated that the determination of that date would be "a factual finding." Id. Therefore, the question of what constitutes the "date of the taking" for purposes of determining when prejudgment interest on a condemnation award begins to run has not been answered by this Court since the Eminent Domain Code was amended in 1995 and the statutory right to prejudgment interest was extinguished.
The question of law as to what is the date of the taking and, consequently, when prejudgment interest begins to run on a condemnation award is now squarely before this Court.
This Court has stated that when common law is repealed by a statute that itself is subsequently repealed, the common law is thereby revived.
 "However, unless we would attribute to the Legislature a general lack of understanding as well as inattention to the requirement of the Constitution, there was but one purpose to be inferred — the purpose to reenact the law which had theretofore been repealed by the original repealing act. The rule of common law was that when a statute or common-law rule was repealed and afterwards the repealing act was itself repealed by a later statute, the earlier law was thereby revived. This rule rested upon the presumed intent of the Legislature in passing the later repealing statute."
Cooke v. Burke, 177 Ala. 155, 159-60, 58 So. 984, 986
(1912); see also Ex parte James, 836 So.2d 813
(Ala. 2002); and Albany Warehouse Co. v. F.B. Fisk CottonCo., 12 Ala.App. 527, 532, 67 So. 728, 730 (1914).
As noted above, until the Eminent Domain Code was adopted in 1985, Southern Natural Gas was determinative as to the issue of when prejudgment interest begins to run. The 1995 amendment to § 18-1A-211, Ala. Code 1975, effectively repealed this 1985 change, thereby reenacting the rule ofSouthern Natural Gas. This Court now reaffirms the rule set out in Southern Natural Gas — that prejudgment interest begins to run on the date the condemnor posts bond on a prospective condemned property, unless the condemnor has taken actual possession of the property before posting bond, in which case the prejudgment interest on the condemnation award begins to run on the date the condemnor took actual possession.
Samford asserts that the date of taking and, therefore, the date when pre-judgment interest should begin to run is the date on which Homewood filed its application for an order of condemnation and notice of lis pendens — April 23, 2003. Samford argues that Homewood's filing of the application and notice of lis pendens "effectively ousted Samford of its ability to derive income from its property by transfer" and therefore constituted a taking. In Kirby Forest Industries, Inc. v.United States, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1
(1984), the United States Supreme Court specifically discounted this argument:
 "It is certainly possible, as [the condemnee] contends, that the initiation of condemnation proceedings, publicized by the filing of a notice of lis pendens, reduced the price that the land would have fetched, but impairment of the market value of real property incident to otherwise legitimate government action *Page 69 
ordinarily does not result in a taking. At least in the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment."
467 U.S. at 15, 104 S.Ct. 2187 (citations and footnote omitted).
The Supreme Court held that the taking of the condemnee's land occurred on the date the government paid for and acquired title to the land. 467 U.S. at 16, 104 S.Ct. 2187. However, the Court also noted that the commission's valuation of the condemnee's land occurred three years before the taking and that the condemnee was entitled to the value of the land as of the time of taking, when the government acquired title to the land.467 U.S. at 17, 104 S.Ct. 2187.
Applying the law and reasoning of Kirby Forest to the facts of this case, we reject Samford's argument that the date of taking and consequently the date the prejudgment interest began to accrue was the date Homewood filed its application for condemnation and notice of lis pendens. The record establishes that on February 19, 2004, the probate court accepted the appeal bond posted by Homewood and that at that time Homewood had right of entry onto the property; therefore, in accordance withWilliams and Southern Gas, Samford is entitled to prejudgment interest, which began to accrue on February 19, 2004. Therefore, we reverse the judgment of the circuit court insofar as it held that Samford was not entitled to prejudgment interest and remand the case for the circuit court to determine the proper rate of prejudgment interest to be applied during the period from the date of the taking, i.e., February 19, 2004, to the date of the judgment. See Williams, supra.
In light of our holding, we pretermit any discussion of the other issues Samford raises on appeal.
 Conclusion
The judgment of the circuit court is reversed and this case is remanded for proceedings consistent with this opinion.
APPLICATION GRANTED; OPINION OF AUGUST 18, 2006, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and SEE, HARWOOD, and SMITH, JJ., concur.
BOLIN, J., recuses himself.